Bosworth, Ch. J.
The defendants did not except to the charge as made, but took several exceptions to refusals to charge as requested.
The defendants sold the stock on the 19th of November, 1860. The main question of fact submitted to the Jury was, whether the defendants agreed on the 19th, to hold the stock until the 20th, without a further deposit being made on the 19th. On the 19th, at the lowest price of the stock, the defendants were indemnified by the deposits in their hands, against all the depreciation that had. occurred after they made the contract to purchase, up to that time, and had a surplus of $200. This question was properly submitted, if it was competent to receive evidence of such an agreement. The evidence was received without objection. If incompetent, it could only be so because of plaintiff’s written order of November 19th, 1860, which is in these words, viz.:
*347 “Hew York, Nov. 19th, 1860.
Messrs. Meigs & Greeíjxeaf :
Please sell for my account 200 111. Central R. R. at 51.
W. CLARKE.”
The plaintiff testified that on the 19 th, Mr. Greenl’eaf, (one of the defendants,) called on him; said the stock had declined to 52; “asked for another margin of $1,000; I said * * it was not convenient that day, and I asked him if he could not wait until the next day; he first thought he could not conveniently, but after some little Conversation, he agreed to wait until the next, for another $1,000.”
* * “After making the arrangement to wait until the next day, I said to him voluntarily, if the stock ran down to 51, so that all the margin ran out, he had the privilege of selling.” * * * *
“ Q. At the interview you had with Mr. Greenleaf, on the 19th, you say it was agreed between you that if it went down to 51 that day, they might sell?
“Objected to, as conversation prior to the written instructions. Allowed. To which defendants’ counsel duly excepted.
“A. Yes, sir.
“ Q. Was this order given in pursuance of that arrangement?
“A. It was entirely so; it was called for by Mr. Green-leaf himself.”
The above is the only exception taken to the admission of any part of this evidence.
I think it was competent. It does not contradict the written order. That could not be construed, in the light of the facts present to the minds of both., parties at the time it was made, as requiring or authorizing a sale at 51, if the defendants were offered more, or knew they could get more. The stock had only fallen to 52, when it was written. That was the lowest price at which it was sold that day. The plaintiff wished until the 20th to make a further deposit of $1,000, and take his chánces of a rise. Even though "the defendants may have had a right to de *348 maud a deposit of $1,000 on the 19th, and on the plaintiff’s refusing to make it, to sell the, stock, yet they could waive it, and give the plaintiff until the next day. Non constat, if they had refused to waive it, that the plaintiff would not have made a deposit that day. Having agreed to wait until the next day, and thus made it unnecessary for him to deposit that day, it would he a fraud- on him to allow them to recede; and especially so, without notice to the plaintiff.
It is consistent with the terms of the written order, that it was given to be acted on, on that day, only in case the stock fell to 51 that day. It is not a case where the rights of third parties intervene; but a case between principal and agent, between the parties to the transaction.
It is not a forced construction of the power of attorney, to hold that it authorized a sale only in the event of the stock.falling to 51. But without attaching any importance to that suggestion, I think the evidence was competent and admissible, even if all of it had been objected to. (Crane v. Maynard, 12 Wend., 408; Flynn v. McKeon, 6 Duer, 203.)
A verdict in favor of the plaintiff on this point is not against evidence. The testimony of E. H. Shaw as to the agreement of the defendants to wait until the 20th, is direct and pointed.
The request to charge that this agreement to wait was without consideration and void was properly overruled.
It was'for the defendants to insist on having the deposit on the 19th, or else they were precluded from objecting. After agreeing to wait until the 20th, the position of the parties was the same as if no deposit had been asked for on the 19th;_ at least, the defendants’ position was no better, and the plaintiff’s not worse. If the plaintiff had said, I will make the deposit to-day, if you insist on it, but it will be more convenient to do it to-morrow; and the defendants had said, you need not make it till tomorrow, and they had then sold on the 19th without notifying’the plaintiff of their intention to do so, the act would *349 be a fraud on the plaintiff. The actual fact as the jury has found it, is the same in legal effect.
The substance of the transaction was the same as if the defendants had called on the 19th, and demanded that a further deposit of $1,000 should be made on the 20th, and the plaintiff had said he would make it, and also agreed on his part, if the stock fell to 51 on the 19th, it might be sold that day, at that price. That put it in defendants’ power to protect themselves from loss, and gave the plaintiff the chances of the next day’s market, if the stock did not fall to 51 on the 19th. The defendants concluded, by their agent, to wait till the 20th for a further deposit.
The second request to charge was properly refused. The averment in the complaint is that defendants sold on the 19th, without authority from the plaintiff, “ and in violation of their agreement and duty as such brokers.” This allegation is broad enough to admit under it the evidence received. (Crane v. Maynard, supra.)
The third request was properly refused. There is no such rule of law as that, where an agent does an illegal act, on a certain day, and his principal receives notice in the afternoon of that day, he will be deemed, as a matter of law, to have ratified it, if he does not look up the agent and express his dissent before the next day.
The fourth request is untenable. Where an agent has violated his instructions and duty, and made himself liable to an action in damages, nothing but payment of the damages, an accord and satisfaction, or a release, is a bar to the action. And whatever offers or tenders have been made, so long as they are unaccepted, .they neither affect the right to recover, nor the measure of damages. Where a tender authorized by common law or statute has been duly-made, and is properly pleaded, an action to recover more than the sum tendered may be barred. But even in such cases a tender of anything less than the full sum due is not matter in mitigation. (Clark v. Halleck, 16 Wend., 607; Gould v. Banks, 8 Id., 562.) And a tender of the *350 exact sum due, and keeping it good, even when pleaded, only precludes the recovery of subsequent interest. (Raymond v. Bearnard, 12 Johns., 274.)
The fifth request was properly refused, if the Court, in its instructions as to the rules of damages, was as favorable to the defendants as consists with the rules of law. If the defendants had agreed not to sell until the 20th, and sold wrongfully on the 19th, the plaintiff was, at the least, entitled to the difference between 52 and the price at which it sold on the 20 th.
But there was no evidence on which the matter of that request could be submitted. The lowest sales on the 20th were at 53f. So that, had the plaintiff’s instructions been obeyed, and a sale been made on the 20th, he would not have sustained the same, or as much loss as by a sale on the 19th. If the request meant to include the contingency of the plaintiff’s holding beyond the 20th, and to refer to a time when, after that, he might possibly have authorized a sale, then it involved no rule of law which a Jury or a Court could apply, and was properly disregarded.
The rule of damages stated to the Jury was favorable to the defendants. It virtually assumes that the plaintiff would not have made a deposit of $1,000 on the 20th, and that the defendants would rightfully have sold the stock that day. It was easier to deposit $1,000 than to purchase 200 shares at 55, or even 53|, and pay for it. If the deposit of $1,000 had been made on the 20th, the plaintiff would have been entitled to the benefit of his contract, and to have the stock held during the whole of the 60 days. The stock is not shown to have so depreciated during the 60 days, as that a further deposit could have been required. On the 21st Oct., fell to 51g; on the 22d, ranged from 55 to 59; on Dec. 7, 300 shares were sold at 51, and during the 60 days it rose to 77£. If, under this request, the defendants wished it left to the Jury to find whether the plaintiff would not have sold on the 7th of December, the request was properly refused.
I think the rule was stated as favorably as the defend *351 ants could claim. (Andrews v. Clerke, 3 Bosw., 585.) They cannot complain, and did not except to it.
The last request to charge has been sufficiently considered in the review made of the first request, and of the charge actually given in respect to the matter of those two requests.
These remarks dispose of all questions, except those arising on defendants’ motion to dismiss the complaint.
It was asked on three grounds, viz.:
1st. “ Because it had not been proved that the defendants were paid, or were to be paid anything for services.
2d. “Because it had not been proved that the plaintiff had ever exercised his option, nor that a demand was made upon the defendants for the stock, and their refusal to deliver it; nor that the plaintiff had paid or offered to pay, or been ready and willing to pay the balance due for said stocks, under the agreement for the purchase thereof.
3d. “Because it had been proved that the defendants had offered to replace the stock for the plaintiff.”
The third ground has already been considered. It is a sufficient answer to the first, that the law implies a promise by the plaintiff to pay to the defendants what their services were reasonably worth. %
The answer to the second is, that it is untenable. The defendants procured a contract for 200 shares. It may be conceded that the delivery of any 200 shares would satisfy the contract of their vendors. But, assuming the transaction to be a real one, and not a gambling operation, it follows that, when the defendants received 200 shares, under their contract of purchase, they received stock, which, as between them and the plaintiff, was received for him, and on account of which he had paid them, by the deposits made with them, $2,000. They sold stock, when they sold it, which he had bought through them, and sold it as being, as between him and them, his stock, the losses on the sale of which he was to bear, and the profits on which would be his.
By the act of selling, the defendants had put it out of *352 their power to deliver it, if demanded, and no demand was necessary. This is not a suit to recover possession of the stock, or to compel a delivery of it, in which case a request to deliver and offer to pay might be necessary, but is an action for damages for unlawfully selling stock which the defendants purchased for the plaintiff, and received under such purchase, and which it was their duty to hold and deliver to him, unless by reason of some subsequent default they could lawfully sell it, in which event, they would sell it, as being, as between him and them, his stock, and at his risk.
I think the motion to dismiss the complaint was properly denied. The defendants wrongfully terminated a contract which they had made for the plaintiff, and to the advantages of which he was entitled, and rendered it impossible for the plaintiff to obtain an execution of it by the delivery under it by the original vendors of any stock to him.' And for the damages resulting from this wrongful act they are liable.
This .disposes of all questions raised by the defendants’ appeal, and they are not entitled to a reversal of the judgment.
The remaining question is, can the plaintiff’s appeal be considered ?
The defendants moved at Special Term for a new trial, and the Court ordered that a new ¿rial be granted, unless the plaintiff stipulated to deduct $50 from the verdict, in which event the motion should be denied.
The stipulation was given to comply with that condition, and the plaintiff then entered a judgment (reciting such stipulation) for the amount of the verdict, less the sum so deducted.
This is a waiver of the plaintiff’s right to appeal.
It is, in effect, a stipulation to deduct $50, and waive all exceptions taken by him, in the event that the Court will refuse a new trial by reason of the supposed error of the Jury in rendering a verdict too large by the suni of $50. The Court did refuse to grant a nqw trial on that *353 condition, and the stipulation was given to comply with such condition. Such a stipulation should be enforced by the appellate Court. (Townsend v. The Marsterson, &c., Stone Dressing Co., 15 N. Y. R., 587.) But a reversal of the judgment and a new trial is not the form in which the plaintiff seeks relief by his appeal. He insists that he is entitled to the difference between 61 and 77|-, and that this may be awarded to him without a new trial. His fifth point is that “there is no need of a new trial;” that the Court can compute the damages and reform the judgment in respect to its amount.
A new trial would be necessary to reach the result of a recovery of greater damages. A new trial is not a result sought by the plaintiff, and if it is, he has already prevented the granting of one, and the granting of which was refused, merely because he gave a stipulation, which the Court, at Special Term, thought would produce a final result, just to both parties.
The judgment should be affirmed. I do not understand that the giving or awarding of costs is in the discretion of the Court. That kind of discretion cannot be exercised, on appeal, except in two cases, viz.: (1.) Where a new trial shall be ordered;' or, (2.) The judgment shall be affirmed in part and reversed in part.
If affirmed in toto, the law disposes of the question of the right to costs.
Barbour, J.
The case made by the pleadings and proofs upon the trial below, was this:
On the 15th of November, 1860, the plaintiff directed the defendants, as stock brokers, to enter into a cdhtract to purchase for him 200 shares Illinois Central Railroad stock, at a price not exceeding 65 per cent of its par value, the plaintiff to have the right to call for and take the same at his option, upon payment of the purchase price, at any time within thirty days, upon giving one day’s notice of his intention to take such delivery, or, in case no such notice should be given, then it was to be obligatory on *354 the vendor to deliver, and on the purchaser to take and pay for such stock at the expiration of the thirty days.
The defendants, in pursuance of this direction, on the sáme day, made such contract to purchase the 200 shares at 61 per cent, deliverable, however, at buyer’s option, within 60 days.
To this contract the plaintiff assented; and on the same day, in accordance with the custom in regard to such agreements, placed in the hands of the deféndants the sum ■of $1,000 in money, to stand as security to the vendor against any loss or hazard that might accrue to him by a fall in the market price of the,stocks, prior to their delivery to the plaintiff.
On the 17th of November, stock of that description having fallen in the market to 58, the defendants called upon the plaintiff and received a further deposit of $1,000, (among dealers'in stocks, technically termed a margin,) by way of security.
Although there is no direct testimony upon the point, it may, I think, be inferred from the nature of the transaction, and the manner in which the business seems to have been done by the defendants, including a sale by them, that the defendants made the contract in their own names, but for account and risk of the plaintiff. Upon that theory, the deposits were intended as well for the security of the defendants as of the vendor; and the defendants had the power (not to say a legal right) to pay for and take the stock covered by the contract, and sell them in the market, without the assent of the plaintiff.
On the 19th of November, Illinois Central stock having declined to 52, the defendants made a call upon the plaintiff for a further margin of $1,000. The plaintiff was not ready to meet the call, but promised to do so the next day; and it was thereupon agreed between the parties that the call should be filled the next day, and that the defendants should be at liberty to sell the stock immediately, if it should fall as low as 51; and the plaintiff then gave to the defendants an authority in writing to sell such stock at *355 51, without expressing any condition or limitation in the instrument.
Immediately upon receiving that written authority, and on the same day, the defendants sold 200 shares of Illinois Central stock, deliverable and payable the next day, Cor account and risk of the plaintiff, and sent him a statement in writing of such sale.
There is no direct proof in the case that the defendants called for and received the stock which they had contracted to purchase, at 60 days, buyer’s option, on account of the plaintiff. But neither is there any evidence that the defendants held any other stock for him; and both parties to the action admit and assume that the stock sold by the defendants on the 19th belonged to the plaintiff, and was, in fact, the 200 shares covered by the contract. It must therefore be assumed that the defendants called upon the vendor, paid for and took the 200 shares of stock, and sold them at 52.
On the 20th, stock of this description rose to 53| and 55; and at one period during the 60 days covered by the contract, it was sold at 77-?,-.
Evidence was offered upon the trial to prove that the defendants, within a short time after their sale, offered to the plaintiff to replace the stock, and was excluded by the Court; but there was no proof that an offer was made to reinstate the time contract, or to procure another of the same character.
There can be no doubt that the sale of the stock by the defendants was unauthorized by the plaintiff, and was a violation of their duty to him. The written authority to sell at 51 did not necessarily empower the,defendants to sell at 52. Besides, that written authority was a mere power and wholly without consideration, and was modified and controlled by the verbal agreement that it should not be acted upon until the market price fell to 51. It follows that the defendants are liable to the plaintiff for such damages as he has sustained by their wrongful act.
*356 What, then, is the true measure of the damages to which the plaintiff is entitled ?
The injury to the plaintiff, it seems to ¿ne, consists not merely in the' difference between the value of his stock when sold, and the price it would have brought on the next day, as suggested to the Jury by the learned Justice before whom the cause was tried. Kor, even if the defendants had been permitted to establish their theory that they offered to return the stock immediately, would the damages have been merely nominal. The return of that stock, or a like amount of a similar description, would not have placed him where he stood before the sale. The offer was not to replace the contract, nor to return the stock without the payment to the defendants by the plaintiff of its value as fixed by the sale, or its rate in the market. On the contrary, it appears quite evident that all the offers for a settlement included a condition that the plaintiff should take the stock, or a like amount, and, simultaneously, pay for it. That was not enough. The plaintiff was entitled to be reinstated in the contract, which had wrongfully been abrogated by the defendants, so that he might, in accordance with his intention and that of the defendants, when such contract was entered into, call for the stock at any time within the sixty days when the market should be the highest, and sell it at that rate; and he was also entitled to require the defendants to retain the $2,000 which he had advanced to them as margin, and apply it in part payment for the stock under the contract, when the plaintiff should call for it.
I think, therefore, that the plaintiff was entitled to recover, upon the pleadings and proofs, as they stood when the case was submitted, the'difference between 61 per cent, the contract price of the stock, and 77 i per cent, being the highest price it bore in the market within the sixty days, together with $200 of the deposit left in the defendants’ hands, with the interest, from which should be deducted commissions to the defendants upon the purchase, but not the sale of the stock; and that the charge *357 of the Judge upon the question of damages, to wit, that the damages to which the plaintiff was entitled, if any, was the difference between the price (52) at which the stock was sold on the 19th, and the price at which he could have replaced it on the 20th (from 531 to 55), was, consequently, erroneous.
But the error of the Court in this regard did not work any injury to the defendants; and, of course, they are not entitled to any relief, upon their- appeal, because of such misdirection. And, as to the counter appeal of the plaintiff, I concur with Mr. Justice Robebtsost in the opinion that the release by the plaintiff of a portion of the verdict, as a condition for refusing the defendant’s motion for a new trial, is a bar to his obtaining any relief upon this appeal.
As I am unable to find, upon careful examination, any error in the rulings or charge of the Judge, except as above mentioned, I am of opinion that the judgment should be affirmed.