FRANCIS M. EMERY, as Executrix, etc., Respondent, *v* JOHN T. WILSON, Appellant.

E. plaintiff's testator, defendant and one S. entered into a co-partnership in 1865, "for so long a time as they shall mutually agree," E. to receive one-tenth, defendant four-tenths and S. five-tenths of the net profits. For the year 1872, E. received a greater proportion, defendant a less, S. the same. On January 1, 1873, defendant executed an instrument by which he agreed to pay E. "four and three-eighths per cent of the net ascertained profits" of the firm "during the year 1873." E. remained in the firm, receiving during the year the share of profits stated in the original agreement. In an action upon the instrument *held*, that the facts authorized an inference that E. consented to continue the co-partnership, in consequence of the promise of defendant; and that this was a sufficient consideration for the promise.

Upon the death of S. defendant brought an action for an accounting and settlement of the partnership affairs. E. set up in his answer therein that he was entitled, for the year 1873, by agreement, to a greater percentage of profits than that specified in the co-partnership agreement. On the trial he offered in evidence the instrument above described, which was rejected. *Held*, that the former action was no bar to this; that the undertaking of defendant was an individual one having no relation to the partnership or its affairs, as such.

By the articles of co-partnership it was provided that quarterly accounts should be taken and settled between " the co-partners, to the intent that it may thereby appear what are the net profits." *Held*, that it was proper to take the quarterly statements so taken, and entered upon the books for the year 1873, as the "net ascertained profits" upon which the percentage was to be paid by defendant; and that it was no error for the referee to refuse to deduct from the profits so ascertained the depreciation in value of the firm property.

(Argued November 14, 1879; decided November 25, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, affirming

a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought by plaintiff, as executrix of the will of James W. Emery, deceased, upon the following instrument executed by defendant.

" NEW YORK, <em>January</em> 1, 1873.

" I hereby agree to pay to Mr. James W. Emery four and three-eighths per cent of the net ascertained profits of the existing firm of John T. Wilson & Company, as the same may be during the year 1873.

" JOHN T. WILSON."

Said Emery, the defendant, and one Alexander Simpson, entered into co-partnership in October, 1865, as stated in the articles of co-partnership " for so long a time as they shall mutually agree thereto." Said articles contained the following clauses:

" Twelfthly. That, on the first day in the months of January, April, July and October, or within two days thereafter, in each year, a full and perfect account of the co-partnership affairs shall be taken, had and settled between the parties hereto, to the intent that it may thereby appear what is the capital stock of said co-partnership and what are the net profits thereof, and there shall be accredited to each of the members of said firm, interest at seven per cent on the amount of his capital as it stood on the day of the last preceding accounting; and there shall be debited to each of the members of said firm interest at seven per cent on all sums of money charged to his debit since the day of the last preceding accounting, and of the said net profits; the said John T. Wilson shall be entitled to four-tenth parts thereof; the said Alexander Simpson to five-tenth parts thereof, and the said James W. Emery, to one-tenth part thereof.

"And it is agreed that each of said parties hereto may on each such settlement withdraw, from said co-partnership funds, the whole or such part as they may together all agree

upon of the net profits appearing on said account to have been realized during the preceding quarter.

"And it is hereby agreed that the accounts so made up and settled shall be entered in the books of the said co-partnership and be subscribed by each of the parties hereto."

The co-partnership so entered into continued until the death of Simpson in October, 1873; the surviving partners continued it until the end of that year. The referee found that a change was made in the agreement for the year 1872, so that for that year Emery received about eighteen per cent and defendant about thirty-two per cent of the profits; that on or about January 1, 1873, it was agreed that the proportion should be as specified in the articles, defendant at the same time executing and delivering the instrument in question; that the same was an independent and individual undertaking by defendant and constituted a part of the consideration which induced Emery to consent to the continuation of the co-partnership relations and to accept the reductions then made in his share of the profits.

He also found: "That the term 'net ascertained profits,' as used in said memoranda, referred to the profits of the business, as they should be ascertained from time to time, and carried into the books of the firm, for the year 1873, in the ordinary course of business, and not to the profits for that year, as they might be ascertained by final accounting upon the winding up of the said co-partnership." The referee therefore took the entries upon the books as to the amount of profits.

It appeared that on or about the 24th day of February, 1876, the defendant commenced an action against Emery, and the personal representatives of Simpson, for the purpose of an accounting and winding up of the affairs of the co-partnership. Emery in his answer set up, among other things, that by agreement of the parties he was to have, for the year 1873, a greater share than that specified in the articles. The referee found that Emery presented the claim in this action to the court in the said suit, but the same was finally

rejected and disallowed on Wilson's objection, that the same did not constitute any part of said co-partnership affairs, but was wholly a private matter between him and Emery, to which view the plaintiff assented, and thereupon abandoned the same as a proper subject for consideration in that action.

The judgment in the former suit defendant pleaded as bar herein.

*Samuel Hand,* for appellant. In order to sustain an action on the agreement made by Wilson in January, 1873, extrinsic evidence of a consideration must be produced by the plaintiff. (*Geer* v. *Archer,* 2 Barb., 426; *Silvernail* v. *Cole,* 12 id., 685; *Ehle* v. *Judson,* 24 Wend., 93; *Winchell* v. *Latham,* 6 Cow., 682.) The former adjudication is a finality, as to the claim now in controversy, concluding the parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to every other matter which might have been so offered. (*Secor* v. *Sturgis,* 16 N. Y., 548; *O'Beirne* v. *Lloyd,* 43 id., 248; *Embury* v. *Conner,* 3 Comst., 511; *Cromwell* v. *County of Sac.,* 94 U. S. [4 Otto], 351; *Kidder* v. *Horrobin,* 72 N. Y., 159.) If the agreement in suit was a part of the consideration to Emery to give his services to the partnership for the year, then it was clearly either a part of the partnership arrangement, and a subject of adjudication in the former suit, or it was wholly a *nude pact,* as a partner is not entitled to compensation for his services. (*Caldwell* v. *Leiber,* 7 Paige, 483.) If the agreement of 1873, as between Wilson and Emery was to affect a change in their partnership relations as to their respective shares in the partnership, then it related to the partnership affairs, and was involved in the other suit to settle the partnership. (*Jackson* v. *Parkhurst,* 5 J. R., 128; *Hopf* v. *Myers,* 42 Barb., 278.) The agreement in suit was the subject of a counter-claim. (Code, § 501, subd. 1; *O'Beirne* v. *Lloyd,* 43 N. Y., 248.)

*Jesse Johnson*, for respondent. The paper in suit was given for a sufficient consideration. (*Andrews* v. *Pontue*, 24 Wend., 285; *Barton* v. *McLean*, 5 Hill, 256; *Justice* v. *Lang*, 42 N. Y., 493; Graham's Synonymous and Webster's Dictionary on Words "to agree" and "agree.") The parties to an action are not competent to prove either a transaction or the absence of a transaction with deceased as against the deceased's representatives. (*Howell* v. *Van Siclen*, 5 Hun, 115; *Kerr* v. *McGuire*, 28 N. Y., 452; *Barrett* v. *Carter*, 3 Lans., 68; 2 Abb. [N. C.], 16, 17, note.)

Danforth, J. The writing on which this action is brought amounts to something more than a naked promise on the part of the person signing it. It indicates a contract having the consent of Wilson and Emery to the stipulations expressed in or to be fairly implied from it. Although signed by Wilson only, it was accepted by Emery, and its cause or consideration sufficiently appears. It is dated January 1, 1873, refers to the firm of John T. Wilson & Company, as then existing, and the undertaking on the part of Wilson could become operative only by its continuance, for it is according to the sum of profits of the firm as ascertained during that year, that Emery is to be paid. He was under no obligation to remain in the firm, and it is not unreasonable to infer that Emery consented to continue a member of the co-partnership in consequence of Wilson's promise, and that the promise of Wilson was made to induce that consent. There was then a reciprocal agreement between the parties. This view is strengthened by the fact that from the time of this contract, Emery did remain in the firm, and Wilson received from the firm business a larger share of profits than he had received during the year 1872, and Emery received less. Some agreement must have led to this change, and the fact itself throws light upon the contract, indicates a connection between it and the result referred to, and a sufficient inducement for Wilson's promise. In the next place it is obvious that the undertaking disclosed

by the writing is that of Wilson separately, and has no relation to the partnership or its affairs as such. It did not affect Simpson, the other partner, or purport to do so. His share of the profits remained at all times the same, and as he was not a party to the agreement in question, neither does it appear that he was in any manner privy to it, or that Wilson assumed to act for him. It must be construed according to its terms, and, so construed, imposed an individual liability upon Wilson and upon no other person. (*Burnett* v. *Snyder*, 76 N. Y., 344.) Nor was it improper to measure this liability of Wilson according to the profits appearing from the entries upon the books of the firm for the year 1873. The partnership articles under which in 1865 the firm of John T. Wilson & Company was formed, provided that the transactions of the co-partnership should be entered in its books so as to exhibit from time to time the condition of its affairs and that on the first day of January and every three months thereafter in each year, a full and perfect account of its affairs " should be taken, had and settled " between " the co-partners to the intent that it may thereby appear what are the net profits ; " and it was undoubtedly in reference to these provisions that the term " net ascertained profits," was selected as the measure of Wilson's obligation under the contract in question. Nor did the referee err in refusing to deduct from the profits so ascertained, the amount of the depreciation in value which the property of the firm had undergone. The arrangement between Wilson and Emery did not contemplate a final winding up or settlement of the affairs of the firm of John T. Wilson & Company before payment to Emery should be made, but only that the profits of the business of the firm for the year should be ascertained or stated in the manner before referred to. The extent of Wilson's obligation was limited only by the profits so ascertained. It follows from these considerations that the accounting had in the winding-up suit between the partners or their representatives was no bar to the present action. It appears,

however, that upon the hearing thereof the contract now
before us, and Emery's claim under it, were offered by the
plaintiff for the consideration of the referee, but on motion
of the defendant it was excluded on the ground that "it gave
Emery no specific interest or lien upon the property of the
firm," and so was not within the issue in that action. It is
evident, therefore, that the demand now in suit was not in
fact considered in the former action, and except by consent
of all parties it could not have been.

There is no reason, therefore, why the judgment of the
court below should not be affirmed.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.