JAMES C. ROGERS, Respondent, *v.* WILLIAM G. WILEY et al., Appellants.

Where one party is engaged in a business venture with another, from which he may retire at will, his continuance therein is a sufficient consideration to uphold a promise to allow him an advantage not embraced within the terms of the original contract. In such a case it may be inferred that the promisee continued in the business upon the strength of the promise.

Defendants, who were stock brokers, sold certain shares of stock short for plaintiff, under an agreement which required plaintiff to keep on deposit a certain percentage of the amount necessary to make good the short sale, defendants to give reasonable notice of want of sufficient margin and of their intention to buy in if the requisite margin was not made good. The stock having advanced, plaintiff in various interviews informed defendants that he had concluded to close his short account and go long on the stock, but was dissuaded therefrom by them; they finally agreed that if the stock went up to a price specified, which would have exhausted the margin, they would not close plaintiff out but would

carry the stock for him until he could get out all right; plaintiff thereupon consented to leave the matter as it was. The stock continued to advance but did not go above the price named Defendants bought in at a price which about exhausted the margin, without notice to plaintiff; upon receiving notice of the purchase he repudiated it. The market subsequently declined and plaintiff directed defendants to buy to cover the short sale, to sell the securities held as a margin and to account; this they declined to do. In an action to recover damages, *held*, that defendants' promise to carry the stock without further margin gave a right to recover, whether considered as an agreement with a sufficient consideration or as a waiver of notice to furnish more margin, or as an estoppel; in either case the purchase was unauthorized and plaintiff was entitled to recover the difference between the amount paid on such purchase and what the stock might have been bought for when plaintiff gave directions to purchase.

(Argued March 3, 1892; decided March 25, 1892.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made May 21, 1891, which affirmed a judgment in favor of plaintiff, entered upon a verdict and affirmed an order denying a motion for a new trial.

This action was brought to recover damages alleged to have been sustained by plaintiff by reason of an alleged unauthorized purchase of stock by defendants, who were stock brokers.

The facts, so far as material, are stated in the opinion.

*J. Sanford Potter* for appellants. The plaintiff failed to prove a cause of action, and the motion for nonsuit at the close of plaintiff's case should have been granted. No consideration for any secondary agreement was proven. (*Belknap* v. *Bender*, 75 N. Y. 446; 1 Ad. on Cont. 6; *Miller* v. *Draper*, 1 Caines, 45; *Converse* v. *Kellogg*, 7 Barb. 590–598; *Emerson* v. *Slater*, 22 How. [U. S.] 28; *Whittaker* v. *Whittaker*, 52 N. Y. 368; *Philpot* v. *Gruninger*, 14 Wall. 570; *Southwick* v. *Bank of Memphis*, 84 N. Y. 420.) The proofs fail to establish any damages sustained by the plaintiff, it appearing that within a reasonable time after August fifteenth he could have made a new short sale on as favorable terms as those of August

fifteenth. (*Wright* v. *Bank of Metropolis,* 110 N. Y. 237; *Baker* v. *Drake,* 53 id. 211.)

*James C. Rogers* for respondent. Defendants' motion for a nonsuit was properly denied. (*Emery* v. *Wilson,* 79 N. Y. 78; *Briggs* v. *Tillotson,* 8 Johns. 304; *Clark* v. *Dales,* 20 Barb. 64; Story on Prom. Notes, § 186; 1 Pars. on Cont. 358; *Marie* v. *Garrison,* 83 N. Y. 15–24; *Wehrum* v. *Kuhn,* 61 id. 623; *White* v. *Hoyt,* 73 id. 505; *Dunham* v. *Griswold,* 100 id. 226; *Gillett* v. *Whiting,* 120 id. 402; *Campbell* v. *Wright,* 118 id. 594; *White* v. *Smith,* 54 id. 522; *Stenton* v. *Jerome,* Id. 480; *Hess* v. *Rau,* 95 id. 362; *Church* v. *L. F. Ins. Co.,* 66 id. 222; *Underwood* v. *F. J. S. Ins. Co.,* 57 id. 500; *Powell* v. *Powell,* 71 id. 71; *Payne* v. *B. & A. R. R. Co.,* 83 id. 572; *Hare* v. *H. R. B. Co.,* 80 id. 622; *Goodwin* v. *M. M. L. Ins. Co.,* 73 id. 480; *Pechner* v. *P. Ins. Co.,* 65 id. 195; *Pitney* v. *G. F. Ins. Co.,* 65 id. 6; *Titus* v. *G. F. Ins. Co.,* 81 id. 410; *Williams* v. *Q. Ins. Co.,* 39 Fed. Rep. 168–171; *Steen* v. *N. F. Ins. Co.,* 89 id. 315; *Roby* v. *A. C. Ins. Co.,* 120 id. 510; *Shaw* v. *N. B. Society,* 54 Hun, 109; *Bishop* v. *A. Ins. Co.,* 30 N. Y. S. R. 600; 9 N. Y. Supp. 350; *O'Brien* v. *P. F. Ins. Co.,* 11 id. 125.) Defendant Wiley claims he never received plaintiff's letter of August sixteenth, refusing to accept the purchase of the day before, and demanding that defendants cancel it, and notifying them that if they did not he should hold them responsible for any loss that might occur. Even if this were so, plaintiff had the right to presume as he did, that the letter having been duly mailed, was received in due course of mail, and to act accordingly. (*Vassar* v. *Camp,* 11 N. Y. 441; *Trevor* v. *Wood,* 36 id. 307; *Marshall* v. *Arthur,* 2 Hun, 663; *Harris* v. *Tunbidge,* 8 Abb. [N. C.] 291; *Stenton* v. *Jerome,* 54 N. Y. 487.) There was no error in the trial judge's charge in regard to the rule of damages. (*White* v. *Smith,* 6 Lans. 5; 54 N. Y. 522; *Campbell* v. *Wright,* 118 id. 594; *Jones* v. *Marks,* 40 Ill. 312; *Oldershaw* v. *Knowles,* 101 id. 117; *Denton* v. *Jackson,* 106 id. 433; *White* v. *Smith,* 54 N. Y. 526.)

Maynard, J.   Prior to July, 1882, the defendants, who were stock brokers in New York city, were carrying for, and on the account of, the plaintiff, who is an attorney residing at Sandy Hill, 1,000 shares of Delaware and Lackawanna stock, of the par value of $50 each, upon a short sale which had been previously effected at 120 some time before March 1, 1881.

The original contract between the parties was of the usual character, and required the plaintiff to keep on deposit with the defendants, either in money or acceptable securities, at least twenty per cent of the amount necessary to make good the short sale, according to the existing state of the stock market from time to time, and to pay interest at the usual rates upon daily or periodical balances stated, and broker's commissions.   The defendants, on the other hand, were bound to carry the stock until plaintiff directed them to close the transaction, so long as he complied with the terms of the contract on his part, and to give the plaintiff reasonable notice of the want of sufficient margin and of their intention to buy in the stock and cover his short account if the margin was not made good, in accordance with the terms of the notice. (*Markham* v. *Jaudon*, 41 N. Y. 235; *White* v. *Smith*, 54 id. 522; *Hess* v. *Rau*, 95 id. 362; *Gillett* v. *Whiting*, 120 id. 402.)

The plaintiff had ample margin to his credit when this account was opened with the defendants in March, 1881, but the market value of the stock immediately began to appreciate, and continued to advance with some fluctuations until July 22, 1882, when defendants wrote plaintiff that the price had reached 137, with an upward tendency, and stating that his margin with them would carry the stock to 149, and wishing to be instructed what the plaintiff desired them to do in case the stock should suddenly run up to that price, and whether the plaintiff intended to margin it higher, or whether he wished the stock bought in.   The plaintiff replied by letter July twenty-fourth, expressing an opinion that the stock would not be likely to reach the point named, but stating that he would be in Saratoga the next day, and would instruct them

by wire if necessary. The plaintiff went to Saratoga the next day, and there met the senior member of defendants' firm. Plaintiff asked his advice as to what he had better do, and defendant said it was not their habit to advise customers but plaintiff was up there in the country and the stock had gone against him and the defendants would be glad to help him out. Plaintiff stated that he thought of closing his short account and going long of the stock. Defendant advised him not to do so, stating that he thought he could find out what course the market would take, and if he concluded the stock was going up he would telegraph the plaintiff, and in that case, plaintiff had better buy in short and make a turn in the market. At that time the stock was selling at about 137. The plaintiff went home, and not hearing from defendant Wiley, returned to Saratoga on July twenty-seventh and had another interview with him, in which he said he had heard nothing definite about the course of the market. Plaintiff replied that he was becoming greatly concerned and did not like to remain short of the stock, and from what he could learn, and from the papers, the stock was in a strong clique and might be cornered and go up very high; that the papers said it was going to 150 and he had come down with the idea of covering his short stock and going with the tide. The defendant said that would be a good operation if the stock was going up, but he was not sure it was; if plaintiff acted on their judgment he would not do anything or buy any of the stock just yet; but defendant would keep watch of it, and would like to help plaintiff out and if he learned it was going higher he would let plaintiff know at once, and, at any rate, would telegraph him as soon as it touched 140. July twenty-eighth plaintiff received a letter from the firm in New York, dated the twenty-sixth, stating that the stock was very strong and might run up to where plaintiff's margin would be exhausted and that they were awaiting instructions from him. July thirtieth another letter was received dated the twenty-ninth, stating that the stock stood at 138½, but the market showed signs of weakness. Nothing more was heard from

defendants until August ninth, when a telegram was received saying that 143 was bid, and requesting to be advised what to do; that there was talk of the stock going to 200, and wanting an answer quick. The plaintiff replied by telegram the same day, directing defendants to buy 2,000 shares at market price and stop loss with margin either way. The same day plaintiff received another telegram from defendants stating that they did not wish to carry 1,000 shares on six points margin, as they might not be able to stop it, and that if the stock went up they would buy in plaintiff's shares when the margin was exhausted. The defendant Wiley was still at Saratoga and telegraphed plaintiff the same evening that he would like to see him before ten o'clock the next day. Plaintiff went over and defendant told him he wished to explain why they did not fill his order. Plaintiff said that if defendants were not going to obey his orders and wanted to slaughter him, he wished to know it then; that he did not think he had been treated fairly; that he had been over there twice and proposed to cover his sale and go long of the stock and had been advised by defendant not to do so, and defendant had promised to let him know when it touched 140, and the first information he got was when 143 was bid; that if he had done as he had first proposed he would have made $6,000, and if his orders were not to be obeyed he wanted to close the thing right up and transfer the account. Defendant replied that he was afraid plaintiff would feel so and for that reason had telegraphed him to come over, but that he had acted in good faith and believed it would come out all right; that he had information, that plaintiff could rely on, that the stock would not go any higher; that it would go off ten points before it would go up two, and plaintiff could depend upon it. Plaintiff said defendant talked that way before and he did not know what to depend on; that he had come over that morning to close the matter up; that if they wanted more margin he could give it to them. Defendant said he did not want to carry the stock at the price and be long of it for anybody. Plaintiff replied that as it was, he was liable to be closed out within a

day or two, or when the stock reached 149 or 150, and he did not want to leave it in that shape; he wanted to end it and save what few thousand dollars he had left. Defendant then said that he did not think he was mistaken in regard to the matter; that he had information which the plaintiff would have confidence in, if he was at liberty to divulge it; and that if the stock should go up to 149 or 150 the defendants would not close plaintiff out, but would carry the stock for him until he could get out all right; that they had rather do it than buy it and be long of it at this price. Plaintiff replied that with that understanding he was willing to leave the matter as it was, and defendant said that was right; they would work it out for him, and he would yet make money. August fourteenth plaintiff received a telegram from defendants that the stock closed at 146¼, and the next day a telegram that defendants had bought in 500 shares at 148¾ and 500 shares at 149. The plaintiff then wrote defendants a letter expressing surprise at the purchase and repudiating it, if made on his account, and refusing to accept of it and calling upon defendants to cancel the purchase and if they did so he would immediately send them $2,000, and more soon if necessary.

The defendants claim they never received any such letter. The stock did not go above 150; but almost immediately began to decline, closing on the day of the purchase at 147¾ and nine days afterwards it had dropped nine points, and on February 9, 1883, it was quoted as low as 120. February eighth, plaintiff wrote defendants directing them to purchase on his account 1,000 shares of the stock to cover the stock theretofore borrowed by them for him; to sell the securities belonging to him and to render an account of the purchase and sales; which defendants declined to do, upon the ground that they had already bought in the stock for his account on August fifteenth at 148¾ and 149. If plaintiff's direction of February eighth had been followed and no stock had been bought in for him on August fifteenth, there would have been a saving of over $16,000 by the transaction.

The right of the plaintiff to recover depends upon the con-

struction to be placed upon the conversation between plaintiff and defendant Wiley, at Saratoga, on August 10, 1882, taken in connection with the previous conversations and communications which led up to it. If the defendants then agreed through their representative to carry the plaintiff's short interest in the stock, even after his margin was exhausted and until there should be a favorable turn in the market, which would permit him to cover the transaction without loss, the judgment appealed from cannot be disturbed.

For the purposes of this review, the testimony of the plaintiff must be accepted as true. His account of the conference with the defendant was sharply contradicted by Wiley, and many circumstances are pointed out by the counsel for the appellants, which it is insisted invest his evidence with an air of improbability. But the verdict of the jury has foreclosed all discussion in this court upon that point, and we cannot doubt that if his statements are true, the minds of the parties met upon that occasion and there were present all the elements of a valid agreement. In fact, it is not assailed as such, except for an alleged want of consideration. A sufficient consideration, however, for the promise of the defendants to carry the stock without additional margin, was shown when it was made to appear that the plaintiff forebore his determination to immediately cover the stock and close his account without the risk of further loss. It is not necessary to seek for the advantages which the defendants might derive from the retention of plaintiff as a customer and a continuance of his account. It is enough if the plaintiff was induced to act to his pecuniary prejudice upon the faith of the assurance given him by the defendants, that they would carry his stock without exacting any additional security, until the condition of the market was such that he could buy without loss. The plaintiff could have closed his account at any time. On August tenth he had a surplus to his credit of between $3,000 and $4,000. He proposed to buy in then rather than take the risk of losing this sum, and was persuaded to keep the account open upon the faith of the defendants' agreement. Plaintiff also proposed to go long of

the market, which might have afforded him some protection, if he sold at the right time; but refrained from making the investment for the same reason.

It might also be inferred that he omitted for the same cause to put up additional margin.

*Emery* v. *Wilson* (79 N. Y. 78) is authority for the proposition that where one party is in a business venture with another, from which he may retire at his will, his continuance therein is a sufficient consideration to uphold a promise to allow him an advantage, which was not embraced within the terms of the original contract between the parties. In such a case it may be inferred that the promisee continued in the business upon the strength of the promise.

*Clarke* v. *Meigs* (10 Bosw. 337) was like the present case in all its essential features. The plaintiff had failed to keep his margin good and the defendants had agreed not to sell his stock, unless it fell to a certain point; but did so, and it was held that the plaintiff was entitled to recover.

The defendants' counsel requested the court to charge the jury that the agreement was void for want of consideration; which was refused, and the court charged that if the defendants agreed to hold the stock without a further deposit, the plaintiff was entitled to a verdict. The General Term, Ch. J. BOSWORTH delivering the opinion, held that the request to charge that the agreement was without consideration and void was properly overruled. The court also held that the transaction operated both as a waiver and as an equitable estoppel.

It is true that in the case at bar the trial justice held and charged the jury that there was no consideration for this agreement "moving to the defendants;" but he did not charge that there was no consideration at all for the agreement. He did so state in giving the reasons for the denial of defendants' motion for a nonsuit, and it may fairly be inferred that he intended the jury should understand that in his judgment, as matter of law, the testimony did not disclose a valid consideration. But the defendants were not harmed by such an instruction and cannot now complain of it. The court did

submit to the jury, in a charge which was eminently fair, the question whether the transaction between the plaintiff and the defendant Wiley occurred at Saratoga, substantially, as set forth in the evidence of the plaintiff, and the jury, by their verdict, have determined this issue in favor of the plaintiff. It is immaterial how the transaction may be characterized in law ; whether as an agreement having a sufficient consideration to support it, or as a waiver of the notice previously given to plaintiff to furnish more margin, or as an estoppel. If it took place as plaintiff represented it, his right to recover was established and the judgment cannot for that reason be reversed.

We see no error in the measure of damages adopted by the trial court ; which was the difference between the amount paid by the defendants upon the unauthorized purchase of the stock August 15, 1882, and what it might have been bought for February 10, 1883, when plaintiff gave the direction to buy. It was the rule sanctioned by this court in *Campbell* v. *Wright* (118 N. Y. 594).

The judgment should be affirmed, with costs.

All concur, except GRAY, J., dissenting.

Judgment affirmed.