SUPREME LODGE KNIGHTS OF PYTHIAS *v.* CRENSHAW.

1. Even though the killing by the husband of the paramour of the wife be under such circumstances that the law would class the act as justifiable homicide, such killing is not at the hands of justice, either punitive or preventive. Death by the punitive hand of justice is when the law commands the killing. Death by the hands of preventive justice is where the law permits the killing. In each instance the killing must be by some person authorized to carry out the commands of the law, or who is permitted by the law to do the act in the advancement of public justice

2. A policy of life insurance contained the stipulation that "if death is caused or superinduced at the hands of justice, or in violation of or attempt to violate any criminal law," the insurer would not be liable for the full amount of the policy, but only for an amount to be computed according to a mode prescribed in the policy. The insured was slain by a husband, either while he was attempting to have sexual intercourse with the wife, or immediately after the act of sexual intercourse was complete. *Held,* that the death of the husband was not caused or superinduced in the violation of, or attempt to violate, any criminal law, within the meaning of the policy as properly interpreted.

3. In the petition in a suit on a certificate issued by a benefit society, containing a contract of life insurance, the plaintiff alleged, in one para-

graph, that the insured was a member in good standing and the certificate was in full force at the time of the death of the insured; and in another paragraph, that the plaintiff had furnished defendant with proof of the death and performed all the conditions of the contract; and in still another paragraph, that all assessments and dues were duly paid. In the answer the defendant denied that the insured was a member in good standing at the date of his death, and that the certificate was in full force; and also denied, in a general way, the allegations in the other paragraphs. *Held*, that the denial of the defendant was in due form, and the effect of the same was to place upon the plaintiff the burden of proving the allegations as made, notwithstanding they were general in their nature.

Argued July 3,—Decided August 8, 1907.

Action upon insurance policy. Before Judge Mitchell. Colquitt superior court. October 29, 1906.

Kate Crenshaw brought suit against the Supreme Lodge of the Knights of Pythias, alleging, that the defendant was incorporated under an act of Congress, with an office and place of doing business in the county in this State in which the suit was brought; that it issued a benefit certificate and policy of insurance, insuring the life of Perry J. Williams in the sum of $2,000; that the plaintiff is the mother of the insured and the beneficiary under the certificate; that the insured was a member in good standing on February 1, 1906, on which date he departed this life; that during the month of February, and subsequently to his death, the plaintiff furnished proofs of death, and conformed to all of the conditions of the certificate as required, and all assessments and dues were duly paid, and the defendant has not paid the policy nor any part thereof. Judgment was prayed for the $2,000, with interest. Attached to the petition as an exhibit is a copy of the certificate, which recites that it is issued upon the statements and agreements contained in the application for the same. The defendant filed a demurrer, which was overruled, and the defendant excepted. It also filed an answer, in which it admitted the allegations as to its corporate existence and place of business in the county alleged, and that it had issued the certificate as alleged. It denied that the insured was a member in good standing, that the policy was in force on the date that the insured died, that all assessments had been paid, and that proofs of death had been furnished. It admitted that the policy had not been paid, and denied all liability thereunder. It also filed three special pleas in bar. The first

alleged that in the application for the certificate was the following provision: "It is agreed that if death is caused or superinduced at the hands of justice, or in violation of, 'or attempt to violate, any criminal law, then there shall be paid" a lower sum than the face of the policy, to be calculated according to the method prescribed in the application. It then alleged that the death of the insured was caused or superinduced by the hands of justice, for that he was shot to death by R. C. Lindsay while he was engaged in the attempt to commit the offense of adultery and fornication with the wife of the said Lindsay, who discovered them under circumstances showing that the act was about to begin, and the said Lindsay acted promptly and in the burst of passion and indignation which overwhelmed him on discovering the outrage which had been done him, and that the killing was justifiable. The plea then set forth the amount that is admitted to be due under the terms of the policy, which amount the defendant tendered to the plaintiff. The second special plea, after setting forth the stipulation in the application above referred to, and also making tender of the amount admitted to be due thereunder, alleged that the death of the insured was caused or superinduced in the violation of a criminal law, in that the insured was shot to death by Lindsay immediately after he had committed the offense of adultery and fornication with Lindsay's wife, Lindsay slaying him immediately after the guilty act was over, and in the killing he acted promptly and in that burst of passion and indignation that overwhelmed him on discovering the outrage that was done him, and, if the killing was not justifiable, it would reduce the crime from murder to manslaughter. The third special plea, after alleging the stipulation in the application above referred to, and making tender of the amount admitted to be due thereunder, alleged that the death of the insured was caused or superinduced in the violation of, or attempt to violate, the criminal laws of this State, in that he was shot to death by Lindsay while engaged in an attempt to commit the offense of adultery and fornication with the wife of Lindsay, or immediately after he had committed the offense. The plaintiff filed demurrers to the answer and special pleas, which were sustained, and the pleas stricken. The defendant excepted.

T. H. Parker and Carlos H. Hardy, for plaintiff in error.
Shipp & Kline, contra.

COBB, P. J. (After stating the facts.)

1. The first special plea set up the defense that the insured came to his death by the hands of justice. The agreement in the policy was that if the death was "caused or superinduced at the hands of justice," the full amount of the policy could not be recovered. The code declares, "Death by suicide, or by the hands of justice, either punitive or preventive, releases the insurer from the obligation of his contract." Civil Code, §2118. It is contended, not that the death of the insured was the result of the administration of punitive justice, but that it was the result of the administration of preventive justice; that the law allows the husband to kill his wife's paramour under certain circumstances, and the killing, under these circumstances, is in the administration of preventive justice within the meaning of the code. We do not think that the word "preventive" in the code is to be given this interpretation. The word "punitive" certainly refers to death inflicted by an officer of the law in obedience to the commands of the law. The word "preventive" must be construed to refer to a killing by an authorized officer of the law or a private person standing for the time being in the attitude of a public officer; as, a member of the sheriff's posse, or the like, under those circumstances where the law authorizes the taking of human life in the advancement of public justice. It can not be properly interpreted to ever include a killing by a private person, to avenge or prevent a private wrong, even though the circumstances be such that the homicide is justifiable. This section is to be construed in connection with the Penal Code, §70, which enumerates the different cases of justifiable homicide, among them being the killing of a human being by commandment of the law in execution of public justice, and by permission of the law in the advancement of public justice. The word "preventive" was used to convey the same idea as is conveyed in the section of the Penal Code by the word "permission." It refers to a killing done in the advancement of public justice, and therefore must be a killing by an officer or some one having the rights of an officer who is authorized to take human life in the advancement of public justice; and not by a private individual merely to prevent a private wrong, although the act constituting it may be also a public offense.

2. The second special plea sets forth, as a reason why the

defendant is not liable for the full amount of the policy, that the killing "was caused or superinduced in the violation of a criminal law," in that the insured had committed the offense of adultery and fornication with the wife of Lindsay, and that Lindsay had slain him immediately after the act was over. The third special plea set up that the killing "was caused or superinduced in the violation of, or an attempt to violate, the criminal laws of the State," in that the insured was engaged in an attempt to commit the offense of adultery and fornication with the wife of Lindsay, and was killed immediately after the offense had been committed. Certificates issued by benefit societies usually contain a stipulation that the society shall not be liable in case of death of a member while engaged in, or in consequence of, an unlawful act. A contract having such a stipulation is not voided by the mere fact that at the time of the death of the member he was violating the law, if the death occurred from some cause other than such violation. The rule seems to be that in order to relieve the society the violation of the law must be such as to proximately lead to the death of the insured by bringing him into danger of losing his life. That is, the act of the insured must be of such a character as to increase the risk of the insurer, and be entered into under such circumstances that the insured must have known that the act he was committing was of such character as to bring him into danger of losing his life. In Bloom v. Franklin Life Ins. Co., 97 Ind. 478, it was said, "A known violation of a positive law, whether the law is a civil or a criminal one, avoids the policy if the natural and reasonable consequences of the violation are to increase the risk; a violation of law, whether the law is a civil or a criminal one, does not avoid the policy if the natural and reasonable consequence of the act does not increase the risk." In that case the insured was killed while committing an assault and battery upon a member of the family of the slayer, he being a brother-in-law of the assaulted woman. The act of the insured was held in that case to be the proximate cause of his death, within the meaning of the law, upon the theory that the man who makes a violent assault upon a woman knows that he puts his own person and life in danger; for any male relative, and even a stranger, may interfere to preserve the life of the assaulted. It was said in that case, "The natural result of such an illegal act as that of the assured, therefore, was to bring

his person into danger, and as death resulted his own act was the proximate cause." We do not entirely agree with the conclusion reached in that case. In Griffin v. Western Mutual Assn., 20 Neb. 620, 57 Am. R. 848, the insured, with an accomplice, went to the State treasury at the capitol, and presented pistols and demanded money of the treasurer. He delivered it to them, and they started away with it, and had nearly reached the door of the capitol when they were fired upon by a policeman, and the insured was killed. It was held that the policy was not avoided under a stipulation providing that it should be void if the insured should "die while violating any law." The death of the insured in that case would not have occurred except for the crime committed by him, but his death was not the reasonable and natural consequence of the crime committed. In Goetzman v. Conn. Mut. Life Ins. Co., 3 Hun, 515, the policy provided that there should be no liability if the insured should die "in consequence of his violation of any law." It appeared that the insured was killed by a husband immediately after he had criminal intercourse with the slayer's wife; and it was held that the killing could not be treated as the natural and legitimate effect of the act of adultery. Gilbert, J., in the opinion says: "If the assured had been killed a week or a year after the injury, for the same cause, it would have been quite as direct a result thereof as when it was done. In short, the proposition that a man, who has been thus wantonly killed by another, without necessity or lawful excuse, died in consequence of his own act, is logically contradictory, unless it be admitted that the killing of an adulterer follows his offense in the ordinary sequence of events. That admission we are not prepared to make." See also, in this connection, Niblack on Acc. Ins. & Ben. Soc. (2d ed.) §157; Insurance Co. v. Bennett, 90 Tenn. 256, 26 Am. St. R. 685; Insurance Co. v. Seaver, 86 U. S. 531; Supreme Lodge Knights of Pythias v. Bradley (Ark.), 67 L. R. A. 770; Prudential Life Ins. Co. v. Higbee (Ky.), 57 S. W. 614; Davis v. Modern Woodmen of America, 98 Mo. App. 713; Cluff v. Mutual Benefit Life Ins. Co., 13 Allen (Mass.), 308; Brown v. Supreme Lodge Knights of Pythias, 83 Mo. App. 633. It is deducible, from the authorities, that a stipulation of the character now under consideration must be given a reasonable construction, and that the liability of the company is not to be discharged unless the violation

of the law consisted in an act of which the death of the insured was the reasonable and legitimate consequence. If the insured does an act which is a violation of the law, and which he knows puts his life in peril at the time that he commits it, the company is not liable under a policy containing a stipulation of the character now before us. But there must be something in the act itself, independent of other circumstances, which makes the death the reasonable consequence. Death may follow the commission of any violation of law, when the offense is a felony; for the arresting officer is authorized to kill under certain circumstances in order to effectuate an arrest; as, in the case where the insured robbed the State treasurer, he knew that under the law of the land an arresting officer, or, in some circumstances, even a private person, would have the right to slay him in order to take him; but his death resulting from the effort to arrest him was not the reasonable and legitimate consequence of the robbery that he had committed a few minutes before. One who commits the offense of adultery with a married woman well knows that his life is imperiled if the outraged husband take the guilty pair in the unlawful act, or at its beginning, or at its conclusion; but it can not be said, as a matter of law, that the killing of the adulterer is the natural and legitimate consequence of the illicit intercourse between him and the wife of the wronged husband. Death may result, but it can be no more said that the death of the adulterer at the hands of the husband is the reasonable and legitimate consequence of the act of adultery than it can be said that the death of a felon at the hands of an arresting officer is the reasonable and legitimate consequence of the felony committed. Death does not follow in the ordinary sequence of events any more in the one case than in the other. In *Gresham* v. *Equitable Accident Ins. Co.*, 87 *Ga.* 497, the policy excepted from the risk death or injury which may have been caused by fighting. The ruling in that case was simply that such a stipulation refers to voluntary fighting by the insured, or involuntary fighting brought on wholly or partially by his fault or temerity, or fighting for which he is partially responsible either as a volunteer or a rash speaker or as a wrong-doer. Fighting is an act which, in its nature and essence, is calculated to bring on injury or death. Fighting under any circumstances may be attended with disastrous consequences. Death resulting from a fight is the

natural and legitimate consequence which is to be expected. There is nothing in the crime of adultery, although a violation of the law of the land and a great moral wrong, which, in its essence, is calculated to produce the death of the adulterer. Under some circumstances it may be the occasion of the death of the adulterer, but his death is not then the natural and legitimate consequence of the adultery itself. There was no error in striking the special pleas.

3. The certificate declared that it was issued upon evidence received that the insured was "a member in good standing" of the order. In one of the paragraphs of the petition it was alleged that the insured "was a member in good standing," and that the policy and certificate were in full force and effect "on the date that the insured "was a member in good standing," and that the the insured "was a member in good standing" and that the policy was in full force on the date alleged. There was a demurrer to this paragraph, upon the ground that it did not distinctly answer the averments in the petition, but is simply a general denial, and did not put the plaintiff on notice of why the policy was not in force. Since the pleading act of 1893 it is not permissible for a defendant to file what was, in the common-law practice, a plea of the general issue. He can not come in and file a plea merely that he is not indebted, and thus put the plaintiff upon proof of all the material averments in the petition. He is allowed, however, to deny every fact alleged in the petition, and he may interpose his denial by applying the same to each paragraph or each allegation; or he may, in one paragraph of his answer, deny all of the averments in every paragraph of the petition. Civil Code, §5051. Whatever the plaintiff alleges the defendant has a right to deny, and, if denied, the law places the burden upon the plaintiff of proving the allegation, provided it is material in itself, or the plaintiff has made it material in the manner in which he alleges it. The plaintiff saw proper to allege that the insured was a member of the order in good standing at the time of his death. The fact that he was a member in good standing may be made up of a number of facts, but the plaintiff has seen proper simply to make a general allegation. This was, in effect, the plaintiff saying to the defendant, "Deny this allegation, and proof will be introduced to support the same." If the plaintiff had seen proper

to allege those things which constituted good standing, the defendant would have been required either to admit or deny each one of the facts going to make up this status. But having rested simply upon the general allegation that the insured was in good standing, the defendant had a right to interpose a denial to the allegation as made, and thus impose the burden upon the plaintiff to sustain, by proof, the allegation. This is, in no sense, an evasive answer. It is a direct answer. If the defendant had answered that it could neither admit nor deny, the answer would have been evasive; for the facts which constituted good membership are peculiarly within the knowledge of the officers of the order, and the defendant would not be permitted to put the burden of proof upon the plaintiff by a merely evasive answer. But the answer denies the allegation as made, and the allegation as made must be proved to the extent that may be necessary to show a prima facie case of liability under the policy. The defendant can not, under this denial, set up any affirmative defense growing out of a breach of the conditions of the policy or otherwise. What is said in reference to this portion of the answer will also apply to those portions which deny that proof of death had been submitted and that all dues had been paid, etc. The court erred in striking those portions of the answer referred to in this division of the opinion.

*Judgment affirmed in part, and reversed in part.* · *All the Justices concur.*