LANDRY v. INDEPENDENT NATL. LIFE INS. CO.

———

(June 8, 1931.   Opinion and Decree.)

———

S. S. Goldman, of New Orleans, attorney for plaintiff, appellee.

Normann, McMahon & Breckwoldt, of New Orleans, attorneys for defendant, appellant.

HIGGINS, J. This is a suit by the beneficiary of a life insurance policy to recover the face value thereof of $105. The company admitted the issuance of the policy, but refused payment on the ground that the policy contained a provision that "benefits will not be paid * * * for death resulting from violation of law * * *" and that the assured's death resulted from such violation of the law.

There was judgment in favor of the plaintiff, and defendant has appealed.

The evidence shows that the assured was employed by a colored chartered social club at night as a card dealer in poker games. His duties consisted of dealing the cards and handling the poker chips used in playing. It appears that one of the players was marking the cards and the deceased ordered him to "cash in" his chips and leave the game, whereupon the player replied, "It looks like you have something against me, as you have been picking on me all night," and departed from the game. About twenty minutes later he returned and immediately, upon opening the door leading to the card room, fired two shots from a revolver, one of which struck the assured in the body, the latter being still seated at the card table, and the other shot striking another employee. The assured died from the wound. The evidence also shows that the club charged a small fee known as a "cut" for each deal, which was collected by the deceased.

In the argument in this court little attention was paid by counsel for appellee to the question of whether or not the deceased, at the time of his death, was engaged in an illegal occupation; indeed, the point was feebly contested by him, if disputed at all. As a matter of fact we find that the deceased was engaged in a violation of the gambling laws of this state at the time he was shot. Section 8 of article 19 of the Constitution of 1921; section 2 of Act No. 12 of 1870; section 1 of Act No. 192 of 1920; Byrnes v. Richardson, 165 La. 1025, 116 So. 496.

That leaves for consideration the question of whether the death of the assured resulted from the violation of law in which he was engaged at the time he was shot.

The reason for the insertion in the policy of the provision in question is to except risks sustained by the assured while engaged in a violation of the law, for he is in danger both from those whose duty it is to enforce the law and the class of associates whom he must necessarily encounter in such line of occupation. It is well known that those who earn their living through violations of the law are usually of vicious propensities and quickly resort to violence and are not actuated by the same humanitarian or moral principles possessed by the average law-abiding person. In such cases the risk is considerably more precarious and, hence, the reason for the exclusion.

In dealing with this subject-matter where the assured was killed in a horse race conducted contrary to the law of the state, the Supreme Court of the United States in the case of Travelers' Insurance Co. v. Seaver, 19 Wall. 531, 541, 22 L. Ed. 155, said:

"* * * The company in protecting themselves against accident or death caused by a violation of law, acted upon a wise and prudent estimate of the dangers to the person generally connected with such violations. And in the class of cases under consideration we have no question that the sum of money often at stake stimulates to further acts of carelessness in the way of violence, fraud, and a disregard of the rules of fair racing, which increase largely the dangers always attendant on that sport. The class of men who collect on such occasions, and who often become the leading parties in the conduct of the affair when large sums of money are wagered, have led to its denunciation by many wise and thoughtful people, and very surely adds to

the risk of personal injury to the rider or driver. It was against this general species of danger, attending nearly all infractions of the law, that the company sought to protect itself by the clause of the policy in question, and of this class was the reckless driving of Gilmore."

In volume 1, Corpus Juris, pp. 457-59, verbo "Accident Insurance," sec. 145, we find the law on the subject expressed as follows:

"Accident insurance policies usually contain a provision whereby the insurance is not to extend to injuries caused by, or while, or in consequence of, violating the law. In order to bring the injury or death within the terms of this exception there must be a clear violation of some criminal law; and no protection is afforded to the insurer by the fact that when injured or killed he was violating a civil right, a law or ordinance not criminal in its nature, or a rule of morality. In order to relieve the insurer of liability the insured must have been actually engaged in a violation of law at the time of the injury, and the injury or death must be shown to have resulted from the act which is claimed to be unlawful, or at least to have had a causative connection therewith: but it is sufficient that the violation of law is a conditional or remote cause of the injury, and it is not necessary that the offense which the insured was attempting to commit should be consummated."

See to the same effect Ruling Case Law, vol. 14, p. 1254, verbo "Insurance," sec. 432.

The Kansas Supreme Court, in Witt v. Spot Cash Ins. Co., 128 Kan. 155, 276 P. 804, 805, approved the following language as a statement of the doctrine:

"In Bloom v. Franklin Life Ins. Co., 97 Ind. 478, 49 Am. Rep. 469, a similar provision was contained in a life insurance policy. The court said:
" 'While the unlawful act of the assured must tend in the natural line of causation to his death, in order to work a forfeiture, it is not necessary that the act should be the direct cause. nor that the precise

consequences which actually followed could have been foreseen. It is enough if the act is unlawful in itself, and the consequences flowing from it are such as might have been reasonably expected to happen, for, in such a case the ultimate result is traced back to the original proximate cause.'"

In the instant case the assured was engaged in violating the law at the very moment of his death; there had been a dispute over the game; there had been trouble between the parties prior to the shooting; the ill feeling between the slayer and the deceased was engendered by the game which was being conducted in violation of the law of this state; and the cause of the shooting was the fact that the assured had put his assailant out of the game for marking cards. It therefore appears to us that the direct, proximate cause of the trouble and the killing arose out of and resulted from the assured's violation of law. Standard Life & Accident Ins. Co. v. Fraser, 22 C. C. A. 499, 76 F. 705; Kneedler v. Bankers' Accident Association, 188 Ill. App. 293.

Counsel for the appellee has cited the case of Grose v. Liberty Industrial Life Ins. Co., 6 La. App. 390, as controlling in this matter. In that case the assured provoked a quarrel with his slayer, causing a breach of the peace and assault. After the parties were separated and the assured attempted to peacefully leave the room where the fight occurred and was in the act of doing so, the slayer fatally stabbed him. The insurance company refused to pay the loss because the assured had lost his life as a result of "injuries received by him while violating the law." The court said:

"* * * When Grose was walking towards the door, peacefully, with the idea evidently of getting out of the building, he was acting in obedience and not in contravention or violation of law. It was then he received the injuries of which he soon after died, and he was certainly not 'violating the law' at that time so as to operate a forfeiture of his rights as an insured under the stipulation in one of the policies. It is equally certain that when Grose was thus leaving the scene of trouble, that it cannot be said he was showing the slightest disposition to commit a criminal act. It must be noted that the stipulation in the other policy which exempts the defendant from liability, is when death occurs to the insured 'in consequence of a criminal act.' As there was no criminal act committed by Grose, the insured, and none intended, it cannot be held that his death was a 'consequence of any such act.'"

The court further said:

"When the combat has been abandoned by the insured, without any further provocation to his adversary than the original assault, and he is killed, this must be considered an independent event produced by the revengeful spirit of the slayer, and is the proximate cause of death."

That case is not in point because the court found as a matter of fact that the assured was not engaged in the violation of a law at the time the injury was received, but here the assured was engaged continuously in the violation of law up to the moment of the killing, because he was acting as dealer and collector for the "house" percentage, or "take out" at the time he was shot.

Finally, diligent and learned counsel for the plaintiff contends that, in order for the defendant to escape liability under the clause in question, the violation of the law must be of such a character as to bring the assured in the danger of losing his life, citing Accident Insurance Co. v. Bennett, 90 Tenn. 256, 16 S. W. 723, 25 Am. St. Rep. 685; Murray v. New York Life Ins. Co., 96 N. Y. 614, 48 Am. Rep. 658; Supreme Lodge Knights of Pythias v. Cren-

shaw, 129 Ga. 195, 58 S. E. 628, 13 L. R. A. (N. S.) 265, 121 Am. St. Rep. 216, 12 Ann. Cas. 307; Supreme Lodge Knights of Pythias v. Bradley, 73 Ark. 274, 83 S. W. 1055, 67 L. R. A. 770, 108 Am. St. Rep. 38, 3 Ann. Cas. 872.

But we do find as a matter of fact that the assured's occupation, which was a violation of the law, brought him into a position of added danger of losing his life and that there was causal connection between the act which constituted the violation of law and the death of deceased.

In Murray v. New York Life Ins. Co., supra, the assured and his brother conspired to commit assault upon the person of another. The brother held the party while the assured attempted to assault him. During the scuffle a third person drew a pistol and, when the brother attempted to take it away from him, it was accidentally discharged, resulting in the death of the assured. The insurance company declined to pay the claim, contending that the assured had met his death while engaged in a violation of the law. The plaintiff contended that the language only excepted an intentional death resulting from law violation, but not accidental death. The court, in passing upon this issue, said:

"A burglar, who in consequence of a misstep, or to escape detection, falls or jumps from the roof of a house which he is attempting to enter, and is killed, dies in violation of law as plainly as if he had been shot by the owner in defense of his dwelling. In the former as in the latter case, the death results from the criminal act, within the policy, as a natural and reasonable consequence, because, although the immediate cause of the death was the fall, yet the exposure to the danger was encountered in the prosecution of the criminal purpose. * * *

"To exempt the company, must the death result from some peculiar and special risk connected with the commission of crime? It seems to us not, and that it is sufficient to bring a case within the condition, if there is such a relation between the act and the death that the latter would not have occurred at the time if the deceased had not been engaged in the violation of law."

This case would seem to support the defendant's position.

The case of Supreme Lodge Knights of Pythias v. Crenshaw, 129 Ga. 195, 58 S. E. 628, 13 L. R. A. (N. S.) 258, 121 Am. St. Rep. 216, 12 Ann. Cas. 307, the assured was killed by an irate husband after an act of adultery with the slayer's wife. The defense relied upon was the violation of the law clause of the policy sued upon. The court held that, in order for the law clause to apply, the assured must have known that he was in danger of losing his life, because of the violation of the law, and that, where a man commits adultery, he does not necessarily incur the risk of losing his life, for often, even when detected, no violence results. But this case is contrary to the weight of authority and we decline to follow it. See Bloom v. Franklin Life Ins. Co., 97 Ind. 478, 49 Am. Rep. 469; Flath v. Bankers' Casualty Co., 49 N. D. 1053, 194 N. W. 739; Travelers' Insurance Co. v. Seaver, supra; Duran v. Standard Life & Accident Ins. Co., 63 Vt. 437, 22 A. 530, 13 L. R. A. 637, 25 Am. St. Rep. 773; Witt v. Spot Cash Ins. Co., supra; Accident Ins. Co. of N. A. v. Bennett, supra; Murray v. New York Life Ins. Co., supra; 1 C. J. 458; 14 Ruling Case Law, 1254.

For the reasons assigned the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of the defendant, dismissing plaintiff's suit at her cost.

JANVIER, J., takes no part.