PAULINE SZYMANSKA *v.* EQUITABLE LIFE INSURANCE COMPANY.

*(February* 25, 1936.)

LAYTON, C. J., RICHARDS and RODNEY, J. J., sitting.

*Cohen* and *Cohen* for plaintiff.

*Hering* and *Morris* for defendant.

Superior Court for New Castle County, No. 97, March Term, 1935.

LAYTON, C. J., delivering the opinion of the Court:

The demurrers to the pleas raise the questions whether the death of the insured resulted from injuries received through (1) accidental means; (2) violation of law directly; or (3) indirectly therefrom.

The answer to the first two questions depends upon a consideration and proper application of the doctrine of proximate cause, seldom absent from insurance cases. This must be determined from the factual basis presented upon mixed considerations of logic, common sense, justice, policy and precedent. See *Island Express v. Frederick*, 5 *W. W. Harr.* (35 *Del.*) 569, 171 *A.* 181.

As said by Chief Justice Shaw, in *Marble v. City of Worcester*, 4 *Gray* (*Mass.*) 395:

"The whole doctrine of causation, considered in itself metaphysically, is of profound difficulty, even if it may not be said of mystery. * * * The law, however looks to a practical rule, adapted to the rights and duties of all persons in society, in the common and ordinary concerns of actual and real life."

In the field of negligence, the intervening negligent act of a third party does not relieve a defendant from liability for his own negligence, if the former was reasonably to be anticipated. *Stucker v. American Stores Co.*, 5 *W. W. Harr.* (35 *Del.*) 594, 171 *A.* 230.

And, in the field of insurance, where indemnity is sought from an insuring company for injury or death resulting from accidental means, the same test is applied to determine the quality of the means. *Koester v. Mutual*

*Life Ins. Co.* (*Del. Sup.*), 6 *W. W. Harr.* (36 *Del.*) 537, 179 *A.* 327.

There, the death of the insured resulted from an unintentional discharge of a revolver which he was striving to take from his wife. The Supreme Court held that the discharge of the weapon during the struggle was not an unforseeable or unusual result, but the natural and probable consequence of the effort made to obtain possession of the weapon, a result which might well have been expected and probably apt to occur. Therefore, while the death was accidental in the sense that it was unforseen and unexpected, the means which caused the death were not accidental.

■ Where liability is sought to be established under such provision, the plaintiff may not recover upon a mere showing that injury or death was unforseen, unexpected, an unlooked for mishap, and therefore, in common understanding, an accident; for, the insurance is not against an accidental result. The precisely selected words defining liability distinguished between the result and the external means by which it is produced. *Landress v. Phœnix Mutual Life Ins. Co.*, 291 *U. S.* 491, 54 *S. Ct.* 461, 78 *L. Ed.* 934, 90 *A. L. R.* 1382.

■ The instant case is within this reasoning and rule. Disregarding philosophical subtlety, we think that one, who in the pursuit of his lust, makes improper advances to the wife, or reputed wife, of another, in her own home, creates voluntarily a situation fraught with danger to himself in that discovery by and violence at the hands of the outraged husband are reasonably forseeable, and such as naturally and probably will result.

The conduct of the insured, therefore, was so tied with

the result, that it became a means, an efficient co-agent in producing it, without which it would not have happened, and hence, contributed proximately to the result. The death of the insured was unexpected, unforseen, and, in that sense, accidental. The means were not accidental.

The plaintiff, addressing the argument indifferently to all of the questions raised, contends that the conduct of the insured furnished an occasion, not a cause, of the injury and death, and relies largely upon the authority of *Supreme Lodge K. P. v. Crenshaw,* 129 *Ga.* 195, 58 *S. E.* 628, 13 *L. R. A.* (*N. S.*) 258, 121 *Am. St. Rep.* 216, 12 *Ann. Cas.* 307.

There, a provision of the policy relieved the insurer from liability if death was caused or superinduced in violation of any criminal law. A plea alleged that the insured, immediately after committing adultery with a married woman, was killed by the injured husband. The court was of opinion that the death was not caused by violation of the statute denouncing adultery. The reasoning was, while one who commits adultery with a married woman well knows that his life is imperiled if caught in the act by the husband, yet, the killing is not, as a matter of law, the natural and legitimate consequence of the illicit act any more than is the death of a felon at the hands of an arresting officer the reasonable and legitimate consequence of the felony committed. For, it was said, there must be something in the act itself, independent of other circumstances, which makes the death the reasonable consequence, as, for example, fighting, which, in its nature, is calculated to bring on injury and death; not so with adultery which, in some circumstances, may be the occasion of, but not the natural and legitimate cause of death.

*Railway Mail Ass'n v. Mosley* (*C. C. A.*), 211 *F.* 1,

cites this authority with apparent approval. *Landry v. Independent Nat. Life Ins. Co.,* 17 *La. App.* 10, 135 *So.* 110, refuses approval.

Ability to foresee the injury in the precise form in which it, in fact, resulted, or to anticipate the particular consequence which actually follow from the wrongful act, is not required. It is sufficient that the injury is the natural though not the necessary, result of the act. 22 *R. C. L.* 125.

The same learned judge who wrote the opinion in the *Crenshaw Case,* discussed at length the doctrine of proximate cause in *Southern Ry. Co. v. Webb,* 116 *Ga.* 152, 42 *S. E.* 395, 396, 59 *L. R. A.* 109. There, he quoted with approval the language of a standard text writer that, "the inquiry as to natural and proximate cause and consequence is to be answered in accordance with common sense and common understanding."

Unless we wander into the field of metaphysics, which has been said to be a fertile field of delusion propagated by language, we are unable reasonably to distinguish the difference in proximation of consequence flowing from fighting where hot blood is aroused and injury, therefore, is reasonably to be anticipated, and injury at the hands of an incensed husband who, in his own home, finds one in adultery with his wife. In either case, the injury or death is not the necessary or inevitable consequence. In either case, injury or death is reasonably foreseeable. In the one situation there is activity on the part of the insured; in the other, passivity. The element of causation is present in both. Cause, as a rule, is complex, consisting of a number of conditions each of which is only a part of the cause; and we are unable to say that the conduct of the insured, furnished a mere occasion of injury, not a cause, unless we indulge in an unpractical refinement of logic.

■ The same reasoning applies to the questions raised by the demurrers to the third and fourth pleas, that is, whether the pleas aver facts sufficient to establish the death of the insured as resulting, directly or indirectly, from a violation of law.

By *Chapter 264, Vol. 29, Laws of Delaware,* adultery is defined as the sexual intercourse of two persons, either of whom is married to a third person. Adultery is made a misdemeanor, punishable substantially by fine, or imprisonment, or both.

The pleas allege a violation by the insured of a positive law. The fact that the reputed husband and the woman were living together in a common law relation of marriage is of the least importance, having nothing to do with the problem of proximate cause and consequence, unless it may be said that one living with a woman in such relation will not naturally and reasonably resent another's adultery with her, and in his own home, and therefore injury is not reasonably foreseeable.

Having reached the conclusion that the death of the insured did not result from accidental means, so we conclude that the pleas disclose a death resulting directly through a violation of law. The conclusion is inescapable that the death resulted indirectly therefrom.

Under one aspect of the exclusionary provision of the policy set forth in the third and fourth pleas, the doctrine of proximate cause must be considered and applied. Under the other aspect, that doctrine, in strictness, plays no part.

■ The proviso of the policy is one against increase of risk. The language must receive a reasonable interpretation, and the risk must not be extended beyond that which is fairly within the terms of the policy.

There is ample authority to sustain the conclusion we have reached. In *Travelers' Insurance Co. v. Seaver,* 19 *Wall.* 531, 22 *L. Ed.* 155, the insured was killed while engaged in horse racing in violation of a statute. In *Landry v. Independent Nat. Life Ins. Co., supra,* the insured was engaged in gambling in violation of law. In *Flath v. Bankers' Casualty Co.,* 49 *N. D.* 1053, 194 *N. W.* 739, the insured was transporting liquor illegally and driving his automobile at an illegal rate of speed. In *Murray v. New York Life Ins. Co.,* 96 *N. Y.* 614, 48 *Am. Rep.* 658, the insured was engaged in an assault upon another. In *Bloom v. Franklin Life Ins. Co.,* 97 *Ind.* 478, 49 *Am. Rep.* 469, the insured assaulted a married woman, and was killed by the husband who intervened to protect her. In *Duran v. Standard Life & Acc. Ins. Co.,* 63 *Vt.* 437, 22 *A.* 530, 13 *L. R. A.* 637, 25 *Am. St. Rep.* 773, the insured, while returning from hunting on Sunday, in violation of a statute, slipped on frozen ground and was injured.

■■ From these authorities the following reasonable rules may be deduced which should govern in actions upon policies saving liability where injury or death results from a violation of law; some relation of proximate cause and consequence between the violation of law and the injury or death must appear from the facts of the particular case, this to be determined upon considerations of logic, common sense, policy and justice; a known violation of criminal law will void liability under such proviso, if the natural and probable consequence of the violation of law is to enhance the danger of personal injury or death, and thereby, to increase the risk.

■ Where, as here, the policy excludes liability where ·injury or death results indirectly from violation of law, the necessity of relation of cause and consequence, is minimized. Liability is eliminated even where the act of the

insured is merely a condition producing, or promoting injury. *Duran v. Standard Life, etc., Co., supra; Runyon v. Western & Southern Life Ins. Co.,* 48 *Ohio App.* 251, 192 *N. E.* 882. See *Coxe v. Employers Liability Assurance Corp.* (1916), 2 *K. B.* 629.

The demurrers to the pleas are overruled.

The questions raised by the defendant's demurrer to the second count of the declaration are next to be considered; and first, the contention that the promise declared upon was without sufficient consideration to support it.

 The defendant relies upon the rule that the doing of that which one is already bound to do, either by contract or law, is no consideration. We agree with the rule, but think it not applicable here.

One who insures against injury or death buys protection in some form, either for himself, his estate, or for others, for such time as he may desire, or be able to pay for. There is no compulsion of contract or law requiring him to keep in force the contract of insurance. There is no liability if he shall allow it to lapse.

Insuring companies may well deem it to their advantage, for the maintenance of volume of business, to offer an inducement to influence their insured to maintain their policies. If the inducement take the form of accidental benefit indemnity as an adjunct to a life policy in force, it may be supposed that the insurer has calculated its advantage.

 Consideration lies either in some benefit to the promisor or detriment to the promisee. Here, a consideration may be found in the benefit accruing to the defendant from the insured's keeping in force the policy.

A consideration may also be found in the detriment to the insured arising from his forbearance to cancel, or to allow the policy to lapse.

 It is true the count does not allege that the insured agreed to maintain the policy, for any length of time, or for any time; or in other words, it is not alleged that he agreed to forbear cancellation, or allowing it to lapse. It is often said that forbearance, with no agreement to forbear, is not a sufficient consideration to support a promise. The agreement, however, may be express or implied; and where there is an actual forbearance, at the request of the promisor, an agreement may be implied from the circumstances. If the circumstances are such as to lead to the natural and reasonable conclusion that the promise was made to induce forbearance, and the promisee did, in fact, forbear, circumstances showing a probable presumption, harmonizing with common sense and in conformity with experience, an agreement may be inferred or implied, 1 *Elliott, Contr.* 403; 13 *C. J.* 348, note 86; 6 *R. C. L.* 660; *Boyd v. Freize,* 5 *Gray (Mass.)* 553; *Breed v. Hillhouse,* 7 *Conn.* 523; *Rogers v. Wiley,* 131 *N. Y.* 527, 30 *N. E.* 582; *Emery v. Wilson,* 79 *N. Y.* 78.

The count avers the request to maintain the policy, that is, to continue to pay the weekly premiums, and that these payments, in fact, were continued to be made from the time of the promise to the death, upwards of four years.

An agreement to forbear cancellation, or allowing to lapse, reasonably may be inferred from these circumstances agreeably with common sense and human experience.

 Where there is both benefit to the promisor and detriment to the promisee, there can be no question of the sufficiency of the consideration. 6 *R. C. L.* 654.

We are unable, therefore, to say, as a matter of law, that the count alleges a promise unenforceable for want of consideration.

 Neither is the count indefinite and uncertain in that it is not alleged whether the promise was made in writing or orally. It is true that the object of pleading is to apprise reasonably the opposite party of what he is required to meet; but it has never been considered necessary, in a declaration on a contract to allege that it was in writing. *Oppenheim v. Sterling Tire Corp.*, 2 *W. W. Harr.* (32 *Del.*) 535, 126 *A.* 728; 1 *Couch. Ins.* 128, 131.

 Nor is the count indefinite and uncertain for that it does not allege the name of the agent who made the alleged promise. 2 *C. J. Tit. Agency*, § 610; *Keil Motor Co. v. Royal Ins. Co.* (*Del. Super.*), 6 *W. W. Harr.* (36 *Del.*) 24, 171 *A.* 201.

The demurrer to the second count is overruled.