## McCRARY v. NEW YORK LIFE INS. CO.
## NEW YORK LIFE INS. CO. v. McCRARY.
### Nos. 10533, 10534.

Circuit Court of Appeals, Eighth Circuit.
July 10, 1936.

W. L. Dwyer, of Plattsmouth, Neb. (D. O. Dwyer, of Plattsmouth, Neb., on the brief), for Erma V. McCrary.

David A. Fitch, of Omaha, Neb. (Norris Brown and Ralph M. West, both of Omaha, Neb., on the brief), for New York Life Ins. Co.

Before GARDNER and SANBORN, Circuit Judges, and NORDBYE, District Judge.

GARDNER, Circuit Judge.

There are here two appeals from a judgment entered in an action to recover on a policy of life insurance. Appellant Erma V. McCrary, the beneficiary named in the policy, plaintiff below, has appealed from the judgment because it denied her the right to recover on the double indemnity provision for accidental death of the insured. Appellant New York Life Insurance Company, defendant below, has appealed from that part of the judgment as entered, which allowed interest on the principal amount recovered, and costs, and an attorney fee under the Nebraska statute. Section 44-346, C.S.1929.

We shall refer to the parties as they were designated below. The plaintiff's appeal will first be considered.

The policy insured the life of William Douglas McCrary, son of plaintiff, for $2,-000, with a provision for double that amount "upon receipt of due proof that the death of said insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause. * * *" The policy also provided: "This double indemnity benefit will not apply if the insured's death resulted * * * from any violation of law by the insured. * * *" Defendant did not deny liability for the face amount of the policy, less the amount of an outstanding loan, but contested plaintiff's right to recover under the double indemnity clause.

The facts preceding and attending the death of the insured are not in dispute, and, so far as here pertinent, they may be summarized as follows: On March 6, 1934, at about 10 or 11 o'clock at night, Joe G. Mc-Maken returned to his home from West Point, Neb., where he had gone to procure

a gravel contract. He heard voices of two people talking in his home. He had been informed that the insured was visiting his wife, and, suspecting that he was there with her, he went into the basement where he stayed "quite some time," the exact period he did not know. He had a shotgun in the basement belonging to another party. After staying in the basement for some time, he took the shotgun and climbed through the basement window and thence entered the kitchen, and from there went into the living room which adjoined the bedroom where he and his wife usually slept. He heard the regular breathing of two people asleep. He sat in a chair near the door of the living room, just outside the bedroom, until 4:30 or 5 o'clock in the morning. There was an alarm clock ticking in the bedroom, and fearing that it would go off and awaken the sleepers he made an effort to get to it to shut off the alarm, when he made a noise. He heard a rustling, as if some one was getting up in bed, and turned the light on. He saw the insured sitting in bed with his wife. The insured reached for something and then rolled off the bed, taking the covers with him, and McMaken shot him three times. Dr. L. S. Pucelik was called by McMaken, and on examination found the insured in a dying condition with a gunshot wound in the leg, a second in the left chest, and a third in his head. McMaken stated to the doctor and a policeman that he shot the insured the third time "to put him out of his misery." The insured died within about 15 minutes after the doctor arrived, and within about an hour after he was shot. The policeman found a revolver in the pocket of the overcoat of the insured, which was hanging over the foot of the bed in which he was sleeping, after the coat had been removed to the police station.

At the close of the testimony, defendant moved for a directed verdict in favor of plaintiff for the face amount of the policy, less the loan, and for no other amount. This motion was granted, except that the court allowed interest, costs, and attorney fees. This ruling of the court is challenged by plaintiff, and, so far as her appeal is concerned, it is the only question requiring consideration.

Two questions must be considered on plaintiff's appeal: (1) Did the death of the insured result from bodily injury effected through accidental cause; and (2) was the death of the insured the result of any violation of law on his part.

1. The Nebraska statute defining and fixing the punishment for the crime of adultery is as follows: "If any married woman shall hereafter commit adultery or desert her husband and live and cohabit with another man, or if any married man shall hereafter commit adultery, or desert his wife and live and cohabit with another woman, or if any married man living with his wife shall keep any other woman and wantonly cohabit with her, or if any unmarried man shall live and cohabit or have sexual intercourse with a married woman, every person so offending shall upon conviction thereof be imprisoned in the county jail of the county, not exceeding one year." Section 28-902, Comp.Stat.Neb.1929.

Insured's presence at the home of McMaken was not accidental, but intentional and by design. The return of the husband and the consequent shooting were, so far as insured and Mrs. McMaken were concerned, doubtless unexpected and fortuitous. The word "accidental" is defined and explained by the Supreme Court in U. S. Mutual Accident Ass'n v. Barry, 131 U.S. 100, 9 S.Ct. 755, 762, 33 L.Ed. 60, in the following language: "The court properly instructed them * * * that the term 'accidental' was used in the policy in its ordinary, popular sense, as meaning 'happening by chance, unexpectedly taking place, not according to the usual course of things, or not as expected;' that if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted through accidental means."

To render the defendant liable for double indemnity, the cause of the injury must have been accidental. The result of what is voluntarily done, although unforeseen, unlooked for, unexpected, or disappointing, does not make the cause accidental. Shanberg v. Fidelity & Casualty Co. (C.C.A.8) 158 F. 1, 19 L.R.A. (N.S.) 1206; Landress v. Phœnix Mutual Life Ins. Co., 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934, 90 A.L.R. 1382; Lincoln Nat. Life Ins. Co. v. Erickson (C.C.A.8) 42 F.(2d) 997; Connecticut General Life Ins. Co. v. Allen (C.C.A.8) 64 F.(2d) 840; Pope v. Prudential Ins. Co. (C.C.A.6) 29 F.(2d) 185, 186. In the last-cited case it is said: "There is obviously a substantial distinction between an ac-.

cidental result and the result of an accidental cause."

Placing one's self in a place or condition where physical harm may result does not necessarily deprive a resulting injury of having an accidental cause. In New York Life Ins. Co. v. Gustafson (C.C.A.3) 55 F. (2d) 236, 82 A.L.R. 729, the insured was killed by a blow which he received while lawfully engaged in a boxing match. In State Life Ins. Co. v. Allison (C.C.A.5) 269 F. 93, 14 A.L.R. 412, the insured, a soldier, was killed in battle by the explosion of a shell. In Interstate Business Men's Acc. Ass'n v. Lester (C.C.A.8) 257 F. 225, 230, the insured, a medical officer in the Colorado National Guard, was killed by a bullet while he was performing his duty with a detachment detailed to preserve order during a strike. In each of these cases, the insured was held to have received his injuries through accidental means or cause.

In Interstate Business Men's Acc. Ass'n v. Lester, supra, the court succinctly pointed out the line of demarcation as follows: "The line of distinction is this: If the party does something which culpably provokes or induces the act causing his injury or death, then the result is not accidental; but, if he is wholly free from culpability himself, the result is accidental as to him, though it may have been within the deliberate intent of the aggressor."

This distinction is recognized and observed in most of the adjudicated cases. An insured who meets death in an affray in which he was the aggressor cannot ordinarily be said to have suffered his injuries as the result of an accident, for he must be held to have foreseen the result of his wrongful acts [Taliaferro v. Travelers' Protective Ass'n (C.C.A.8) 80 F. 368]; or must have known or anticipated the result [Occidental Life Ins. Co. v. Holcomb (C.C.A.5) 10 F. (2d) 125; Isoard v. Mut. Life Ins. Co. (C.C.A.8) 22 F.(2d) 956]; or must have known by common observation and experience that he would receive an injury [Fidelity & Casualty Co. v. Stacey's Ex'rs (C.C.A.4) 143 F. 271, 5 L.R.A. (N.S.) 657, 6 Ann.Cas. 955]. The injury cannot be said to be accidental if the insured brought it on himself by assaulting another. Prudential Life Ins. Co. v. Overby's Adm'x, 251 Ky. 750, 65 S.W.(2d) 1006; Hutton v. States Accident Ins. Co., 267 Ill. 267, 108 N.E. 296, L.R.A. 1915E, 127, Ann.Cas.1916C, 577; Meister v. Gen. Accident Corp., 92 Or. 96, 179 P.

913, 4 A.L.R. 718; Barham v. State Life Ins. Co., 17 La.App. 253, 135 So. 730.

If one is shot and killed while committing a robbery, his death is not caused by accident, as it must have been foreseen that death might result from participation in the crime. McGuire v. Metropolitan Life Ins. Co., 164 Tenn. 32, 46 S.W.(2d) 53; Price v. Business Men's Assur. Co., 188 Ark. 637, 67 S.W.(2d) 186.

In DeMello v. John Hancock Mut. Life Ins. Co., 281 Mass. 190, 183 N.E. 255, 256, the insured was working aboard a boat which was attempting to smuggle liquor in violation of the federal law. A Coast Guard boat approached and fired two warning shots, and then fired a machine gun at the hull. The insured was shot and mortally wounded by the machine gun. It was held that the bodily injury and death were not incurred by accidental means within the meaning of the policy. The court said: "He was shot and killed while engaged in the transportation of intoxicating liquor in violation of a federal statute. He is presumed to have known that his act was illegal, that the boat containing the liquor might be fired upon by members of the Coast Guard, and that he might be killed. The insured knew that he was liable to be killed if those in control of the boat did not 'bring-to' after the pendant and ensign had been hoisted, and a gun fired as a signal. We are of opinion that in these circumstances it would be contrary to public policy to permit a recovery."

In Szymanska v. Equitable Life Ins. Co. (Del.Super.) 183 A. 309, 312, facts were presented which were quite similar to those in the instant case. The insured, a married man, while under the influence of intoxicating liquor, was in the act of paying improper attentions and making improper advances to Antonia Dymowski at her home, and while so engaged was detected by her husband, or common-law husband, who threw or knocked the insured down the stairway, causing injuries resulting in his death. The court held that the death of the insured was not caused by accidental means. In the course of the opinion the court said:

"Disregarding philosophical subtlety, we think that one, who in the pursuit of his lust, makes improper advances to the wife, or reputed wife, of another, in her own home, creates voluntarily a situation fraught with danger to himself in that discovery by and violence at the hands of the

outraged husband are reasonably foreseeable, and such as naturally and probably will result.

"The conduct of the insured, therefore, was so tied with the result, that it became a means, an efficient co-agent in producing it, without which it would not have happened, and hence, contributed proximately to the result. The death of the insured was unexpected, unforeseen, and, in that sense, accidental. The means were not accidental."

■ As applied to the undisputed facts in this case, insured's death was accidental only in the sense that it was unforeseen and unexpected. The means were not accidental, but were the direct result of insured's own unlawful acts. It is observed that in the Delaware case the court declined to follow Supreme Lodge K. P. v. Crenshaw, 129 Ga. 195, 58 S.E. 628, 13 L.R.A. (N.S.) 258, 121 Am.St.Rep. 216, 12 Ann.Cas. 307, upon which plaintiff in the instant case strongly relies. In disapproving the Crenshaw Case, the court said: "Ability to foresee the injury in the precise form in which it, in fact, resulted, or to anticipate the particular consequence which actually followed from the wrongful act, is not required. * * * Unless we wander into the field of metaphysics, which has been said to be a fertile field of delusion propagated by language, we are unable reasonably to distinguish the difference in proximation of consequence flowing from fighting where hot blood is aroused and injury, therefore, is reasonably to be anticipated, and injury at the hands of an incensed husband who, in his own home, finds one in adultery with his wife. In either case, the injury or death is not the necessary or inevitable consequence. In either case, injury or death is reasonably foreseeable. In the one situation there is activity on the part of the insured; in the other, passivity. The element of causation is present in both. Cause, as a rule, is complex, consisting of a number of conditions each of which is only a part of the cause; and we are unable to say that the conduct of the insured, furnished a mere occasion of injury, not a cause, unless we indulge in an unpractical refinement of logic."

We are of the view that the death of the insured did not, within the meaning of the policy, result from bodily injury effected through accidental cause.

■ 2. From the foregoing, it logically follows that the death of the insured was the result of his violation of law. Szymanska v. Equitable Life Ins. Co., supra; Dur-an v. Standard Life & Accident Ins. Co., 63 Vt. 437, 22 A. 530, 13 L.R.A. 637, 25 Am. St.Rep. 773; Diamond v. New York Life Ins. Co. (D.C.Ill.) 42 F.(2d) 910, affirmed (C.C.A.7) 50 F.(2d) 884.

We conclude that the court properly instructed a verdict denying plaintiff the right to recover on the double indemnity clause of the policy, and on plaintiff's appeal the judgment is therefore affirmed.

The cross-appeal of defendant challenges the judgment to the extent that: (1) It awarded plaintiff interest on the amount confessedly due; (2) it awarded plaintiff costs; (3) it awarded plaintiff attorney fees under the Nebraska statute.

In its answer, defendant admitted that there was due plaintiff the sum of $1769.47, which, it alleged, it had theretofore tendered, and which tender it repeated in its answer. The record shows that the tender as made was made in a form satisfactory to plaintiff. The amount of $1,769.47 is the amount due for the life insurance, without the double indemnity, after deducting a loan made to the insured. The court instructed the jury to return a verdict in the sum of $1,857.97, which included an item of $88.50 interest. Before judgment was entered, defendant moved the court to amend and correct the verdict by omitting the item of interest. This court denied.

■ The effect of a tender is to stop the running of interest unless it appears that the payor, since the tender, has realized interest on the money tendered. Cheney v. Libby, 134 U.S. 68, 10 S.Ct. 498, 33 L.Ed. 818; Peugh v. Davis, 113 U.S. 542, 5 S.Ct. 622, 28 L.Ed. 1127; Baird v. Union Mutual Life Ins. Co., 103 Neb. 609, 173 N.W. 686. The trial court was in error in permitting the recovery of this item of interest.

Before entry of judgment, defendant also filed a motion to tax costs, "for the reason that a tender of the amount due was made plaintiff prior to the commencement of this suit and because defendant is the prevailing party herein." The court overruled this motion, and taxed costs in favor of plaintiff, including the sum of $185.79 as attorney fees under the Nebraska statute.

Section 830, title 28 U.S.C.A., provides: "The bill of fees of the clerk, marshal, and attorney, and the amount paid printers and witnesses, and lawful fees for exemplifications and copies of papers necessarily obtained for use on trials in cases where by law costs are recoverable in favor of the

prevailing party, shall be taxed by a judge or clerk of the court, and be included in and form a portion of a judgment or decree against the losing party. Such taxed bills shall be filed with the papers in the cause."

■ Where there is no federal statute regulating the subject of costs in actions at law, federal courts will award to the parties the costs to which they would be entitled if the litigation were in the state court where the federal court is sitting. National Surety Co. v. Lyons (C.C.A.8) 16 F.(2d) 688.

■ An offer of judgment or a tender for the full amount actually due or recovered will ordinarily defeat the right to recover costs. Under such circumstances, the plaintiff cannot be said to be the prevailing party. Florence Oil & Refining Co. v. Farrar (C.C.A.8) 119 F. 150. As has already been observed, the defendant has at all times admitted its liability for the face of the policy. This attitude was made known to plaintiff before suit was brought and was reasserted in the answer and during the trial. Plaintiff, in her petition, was suing for $4,000, but recovered only the amount which defendant was at all times ready and willing to pay. In fact, the only issue tried was that involving the double liability provision of the policy.

By statute in Nebraska, it is provided that a plaintiff in action upon any policy of life, accident, liability, sickness, guaranty, fidelity, or other insurance of similar nature, shall be allowed a reasonable attorney fee in addition to the amount of his recovery. Section 44-346, C.S.Neb.1929. This statute has been construed by the Supreme Court of Nebraska to mean that plaintiff is not entitled to an attorney fee when the recovery does not exceed the tender made, or where plaintiff is not the successful party, or when it appears that there was in fact no reasonable necessity for bringing the action. Baird v. Union Mutual Life Ins. Co., 103 Neb. 609, 173 N.W. 686; Baird v. Union Mutual Life Ins. Co., 104 Neb. 352, 177 N.W. 156; Gipson v. Metropolitan Life Ins. Co., 112 Neb. 302, 199 N.W. 541, 542.

In Gipson v. Metropolitan Life Ins. Co., supra, the court, among other things, said: "The purpose of the statute was to allow an attorney's fee to a successful plaintiff, in the class of cases covered by the statute, where resort to law was reasonably necessary to secure his rights."

■ There was no necessity for bringing suit to recover the face value of this policy, less the loan properly chargeable against it. Hence, attorney fees ought not to have been taxed. So far as the suit involved the liability for double indemnity, plaintiff was clearly not the prevailing party, and hence she could not recover costs.

On the defendant's appeal, the judgment is modified by striking therefrom the amount of interest and attorney fees, and the provision for the taxation of costs in favor of plaintiff. Defendant should be allowed to tax its costs in the lower court. As so modified, the judgment should be affirmed. American Nat. Bank v. Williams (C.C.A.8) 101 F. 943. It is so ordered.