## WATERS v. NATIONAL LIFE & ACCIDENT INS. CO., Inc.

## NATIONAL LIFE & ACCIDENT INS. CO., Inc., v. WATERS.

### Nos. 3261, 3262.

Circuit Court of Appeals, Tenth Circuit.
July 12, 1946

Rehearing Denied Aug. 7, 1946.

BRATTON, Circuit Judge, dissenting.

---

Marvin T. Johnson, of Tulsa, Okl., for appellant and cross-appellee.

Valjean Biddison, of Tulsa, Okl. (Floyd L. Rheam, of Tulsa, Okl., on the brief), for appellee and cross-appellant.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

PHILLIPS, Circuit Judge.

On March 30, 1938, the National Life and Accident Insurance Company issued to Edgar J. Waters [1] a $5,000 policy of life insurance in which Rubie E. Waters was named as beneficiary. In addition to the life insurance coverage, the policy provided $5,000 additional insurance for accidental death "provided such death * * * be not * * * sustained in connection with violation of law by the Insured. * * *"

The insured owned a home on East 12th Street, Tulsa, Oklahoma. He had two horses, a sow, five pigs, and 24 turkeys. In the barn there was a room approximately 12 feet square, with one door and no windows. In that room, insured carried on the illicit manufacture of whiskey. Insured had been divorced from Rubie E. Waters and was living alone. He was seen by a neighbor watering his turkeys and his horses the evening of July 17. His body was found in the still room about 7 p.m., July 18, 1944. He was lying face down. One hand was grasping a bulb and switch at the end of a light cord. The other end of the cord was screwed into the socket on the wall. The bulb was broken. Insured was lying on part of the cord. The fingers on his hand which grasped the light bulb were burned and the portion of his body that lay on the cord was burned. He was dressed in a pair of shorts and was barefooted. In the room was a 100-gallon unlicensed whiskey still. It was in operation. Gas was used to provide heat for the still. Water was running through the cooling kegs. The kegs were overflowing onto the floor and the floor of the room was wet. The room was filled with steam. The vessel in which the whiskey was being drawn off from the still had run over. In the room, there were about 100 gallon jugs full of nontaxpaid whiskey, packed in pasteboard boxes, four to a box, and a forty-gallon jar containing about thirty gallons of whiskey. In the barn loft over the still room, there were twelve 50-gallon barrels, full of mash, and three or four empty barrels. There were holes in the ceiling of the still room connected with the mash barrels above. There was nothing in the still room except the distilling apparatus and the receptacles containing the whiskey and a twenty-two rifle. There were one or two other lights in the room but they were turned off when the body was found.

The Insurance Company paid the $5,000 life insurance and denied liability for the accident insurance. It was admitted that

---

[1] Hereinafter called insured.

the insured met his death through accidental electrocution. The beneficiary brought this action to recover the additional insurance for accidental death. The Insurance Company set up as a defense that insured's death was sustained in connection with violation of law by the insured. The Insurance Company assumed the burden of proof and introduced uncontradicted evidence establishing the facts above stated. The beneficiary offered no evidence. The trial court reserved his ruling on a motion for an instructed verdict in favor of the Insurance Company and submitted the case to the jury. The jury found in favor of the beneficiary. The trial court set the verdict aside and entered a judgment in favor of the Insurance Company. The beneficiary has appealed.

 The operation of the still and the possession of the whiskey were violations of both Federal and state laws. In order to bring the insured's death within the clause limiting the coverage, it was not sufficient to merely establish the status of a law violator on the part of the insured. It was incumbent on the Insurance Company to prove a causal connection between the violation of law and the death of the insured. Such, we think, is the import of the word "connected" in the exclusion clause.[2] However, the violation of law need not have been the immediate and proximate cause of death.[3]

The proof established that insured was electrocuted in the still room, while he had hold of an electric light attached to an extension cord, at a time when the still was in full operation and when illicit whiskey was stored in the room. There was nothing in the room other than the distilling apparatus, the receptacles containing whiskey, and the small rifle. The only reasonable conclusion that can be drawn from the proven facts is that insured was electrocuted as a consequence of his having gone into the still room in connection with the operation of the still or to obtain whiskey which had been illicitly distilled. Moreover, condensed steam from an operating still would cause the floor to be damp. Insured was barefooted. When he walked on the floor, his feet became moistened. The steam in the room would also tend to moisten his skin. Those facts would cause the current flowing through the extension cord to pass more readily through insured's body, because it is a well known fact that when a person's skin is wet, his bodily resistance to electricity is greatly reduced. The contact between his moistened bare feet and the floor provided a better conductor of electricity.[4] It must follow that there was a causative connection between the operation of the still which caused the floor to be moist and the electrocution of the insured. This would be true, even if the insured went into the still room for some purpose other than one in connection with the operation of the still or the illicit whiskey stored in the room.

 It is suggested that the jury may have concluded that the insured went into the room for a lawful purpose. If it did, its conclusion was predicated wholly on guess or conjecture. It is not one which could have been legitimately drawn from the proven facts. Inferences may be drawn only from facts introduced in evi-

2 National Life & Accident Ins. Co. v. Sutherland, 64 Ga.App. 72, 12 S.E.2d 183 (where a clause identical with the one here involved is construed); Supreme Lodge Knights of Pythias v. Crenshaw, 129 Ga. 195, 58 S.E. 628, 13 L.R.A.,N.S., 258, 121 Am.St.Rep. 216, 12 Ann.Cas. 307; Landry v. Independent Nat. Life Ins. Co., 17 La.App. 10, 135 So. 110, 111; O'Neill v. Metropolitan Life Ins. Co., 345 Pa. 232, 26 A.2d 898, 904, 142 A.L.R. 735; Metropolitan Life Ins. Co. v. Goodwin, 166 Va. 119, 184 S.E. 208, 209.

3 National Life & Accident Co. v. Sutherland, 64 Ga.App. 72, 12 S.E.2d 183;

Metropolitan Life Ins. Co. v. Goodwin, 166 Va. 119, 184 S.E. 208; Szymanska v. Equitable Life Ins. Co., 7 W.W.Harr., Del., 272, 183 A. 309, 313, 314.

4 "As is well known, one of the most important safeguards of the human body against the passage of electrical currents through it is its high degree of resistance. This degree of resistance, however, is subject to a considerable amount of variation. If the skin is dry the resistance is from 5 to 20 times as great as when the skin is wet." The Encyclopedia Americana, 1940 Ed., Vol. 10, p. 181.

dence. They may not be based upon mere speculation, guess, or conjecture as to what might have occurred.[5]

■ The evidence, and the only reasonable inferences that may be drawn therefrom, lead to the conclusion that there was a causal connection between the unlawful operation of the still and the unlawful possession of the whiskey and the death of the insured. Any other conclusion would necessarily rest upon mere speculation, guess, or conjecture. It follows that the judgment of the trial court was right and it is affirmed.

BRATTON, Circuit Judge (dissenting).

Where reasonable minded persons may in the fair exercise of judgment draw different conclusions from the facts and circumstances, considered in their totality, the case should be submitted to the jury. Travelers' Ins. Co. v. Bancroft, 10 Cir., 65 F.2d 963, certiorari denied 290 U.S. 680, 54 S.Ct. 103, 78 L.Ed. 587. But it is the duty of the court to direct a verdict for the plaintiff or the defendant, as the case may be, only where the evidence is undisputed, or is of such conclusive nature that the court, in the exercise of sound judicial discretion, would be compelled to set aside a verdict if returned for the opposite party. Small Co. v. Lamborn & Co., 267 U.S. 248, 45 S.Ct. 300, 69 L.Ed. 597; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720; Central Surety & Ins. Corporation v. Murphy, 10 Cir., 103 F.2d 117; Farr Co. v. Union Pacific Railroad Co., 10 Cir., 106 F.2d 437; National Mutual Casualty Co. v. Eisenhower, 10 Cir., 116 F.2d 891; Oklahoma Natural Gas Co. v. McKee, 10 Cir., 121 F.2d 583. And where a motion for directed verdict made at the conclusion of all the evidence is not granted, the court may subsequent to the return of a verdict for the opposite party grant a seasonably filed motion for judgment notwithstanding the verdict, and en-

ter judgment accordingly. Federal Rules of Civil Procedure, rule 50, 28 U.S.C.A. following section 723c. Such a judgment is the equivalent of a judgment on a directed verdict. Baltimore & Carolina Line v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636.

The double indemnity provision of the policy in suit excludes liability if the insured met accidental death sustained in connection with the violation of law. That provision fairly construed exempts the company from liability if the insured was at the time of his death engaged in a violation of law which had some causative connection with his death. It is not enough that the violation of law and death were contemporaneous. Neither does it suffice that the insured was in close proximity to the place of the violation of law at the time he met his death. It is essential that the violation of law had some causative relation to the death of the insured. Death by accidental electrocution having been admitted on the face of the pleadings, the burden rested upon the company to show that it was sustained in connection with the operation of the still or the unlawful possession of non-tax paid whiskey. The evidence was wholly circumstantial. Viewed as an original proposition, the circumstances indicate strongly that at the time of his death, the insured was preoccupied with the operation of the still. But the circumstances were not conclusive. The opinion of the majority lays stress upon certain conditions, particularly condensed steam in the room and water on the floor. But there was no proof that these conditions existed at the time the insured met his death. He was last seen alive approximately twenty-four hours prior to the finding of his body, and there was no proof indicating how long he had been dead when his body was found. It cannot be said that all reasonable minded persons, viewing the facts and circumstances in their composite effect, would

5 Kentwood Lumber Co. v. Illinois Cent. R. Co., 5 Cir., 65 F.2d 663, 665; Eddy v. Bangor Furniture Co., 134 Me. 168, 183 A. 413; Bechard v. Lake, 136 Me. 385, 11 A.2d 267, 270; Wright v. Conway, 34 Wyo. 1, 241 P. 369, 242 P. 1107, 1111; Reese v. Smith, 9 Cal.2d 324, 70 P.2d 933, 935; Latham v. Hankey, 117 Conn. 5, 166 A. 400, 401; Fort Smith Gas Co. v. Blankenship, 193 Ark. 718, 102 S.W.2d 75, 76; Texas Employers' Ins. Ass'n v. Mints, Tex.Civ.App., 10 S.W.2d 220, 222.

agree that the operation of the still and the having of non-tax paid liquor in his possession bore a causative connection or a causative relation to the death of the insured. And, in such circumstances, it was a question of fact for the jury. That issue was submitted to the jury under appropriate instructions of the court; the jury resolved it in favor of the plaintiff; and the court should not have entered judgment notwithstanding the verdict.